UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DAREN WATSON and CYRIL LEWIS,
on behalf of themselves and on                                  Case No. 13-CV-0684 (LDW)(GRB)
behalf of all other persons similarly situated,

                                    Plaintiffs,

                    -against-

VISIONPRO COMMUNICATIONS CORP.,
VISIONPRO CORP., KEVIN SILVAR and
JOSEPH ROMANO,

                                    Defendants.
-----------------------------------------------------------X

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

KAUFMAN DOLOWICH & VOLUCK, LLP
*Attorneys for Defendants*
By: Jeffery A. Meyer, Esq.
Sanjay V. Nair, Esq.
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Phone: (516) 681-1100

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………………ii

**PRELIMINARY STATEMENT**………………………………………………………..1

**PROCEDURAL HISTORY**………………………………………………..……………2

**BRIEF STATEMENT OF FACTS**………………………………………………...3

**STANDARD OF REVIEW**………………………………………………………....4

**ARGUMENT**………………………………………………………………………5

**POINT I: PLAINTIFFS' CLAIMS FOR UNPAID OVERTIME
OR PREMIUM COMPENSATION**……………………………………………5

A. Plaintiffs Were Exempt From Overtime Because They Were
Paid on a Commission Basis……………………………………………..5

1. Plaintiffs Regular Rate of Pay is in Excess of One and One-Half
Times The Minimum Hourly Rate…………………………..…………6
2. More Than Half of Plaintiffs' Compensation Represents
Commissions on Goods or Services………………………………….10
3. VisionPro Was a Retail or Service Establishment………………………12

B. Plaintiffs Were Otherwise Compensated for All Hours Worked,
Including Hours Worked In Excess of Forty Hours Each Week……………14

**POINT II: PLAINTIFFS' CLAIMS FOR UNLAWFUL DEDUCTIONS
FROM WAGES MUST BE DISMISSED**……………………………………………16

**POINT III: PLAINTIFFS' CLAIMS OF FAILURE TO PROVIDE
STATUTORY WAGE NOTICE MUST BE DISMISSED**…………………..………17

**POINT IV: PLAINTIFF DAREN WATSON'S CLAIM FOR RETALIATION
MUST BE DISMISSED**……………………………………………………………..18

**CONCLUSION**………………………………………………………………21

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)…………………………………………...4

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)…………………………………………......4

*Chenensky v. New York Life Ins. Co.*, 07-cv-11504 (WHP), 2009 WL 4975237

    (S.D.N.Y. Dec. 22, 2009)………………………………………………………14, 17

*Hicks v. Baines*, 593 F.3d 159 (2d Cir. 2010)…………………………………………..4

*Horn v. Digital Cable & Communications*, Inc., 06-cv-325, 2009 WL 4042407

    (N.D.Ohio Feb. 11, 2009)………………………………………………..6, 11

*Johnson v. Wave Comm GR LLC*, 4 F.Supp.3d 423 (N.D.N.Y. 2014)……………….5–6, 12–14

*Jones v. Tucker Commc'ns, Inc.*, 11-cv-398, 2013 WL 6072966

    (M.D.Ga. Nov. 18, 2013)……………………………………………….…5

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011)…………………………………15

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817,

    36 L.Ed.2d 668 (1973)………………………………………………….…18

*Moore v. Advanced Cable Contractors*, Inc., 12–cv–00115 (RWS), 2013 WL 3991966

    (N.D.Ga., Aug 1, 2013)…………………………………………………11

*Mullins v. City of N.Y.,* 554 F.Supp.2d 483 (S.D.N.Y.2008)…………………………………19

*Mullins v. City of N.Y.,* 626 F.3d 47 (2d Cir. 2010)……………………………………...19

*Owopetu v. Nationwide CATC Auditing Servs., Inc.* 10-cv-18, 2011 WL 883703

    (D.Vt. Mar. 11, 2011)………………………………………………….5, 12

*Owopetu v. Nationwide CATC Auditing Servs., Inc.* 10-cv-18, 2011 WL 4433159

    (D.Vt. Sept. 21, 2011)………………………………………………....5, 13

*Pachter v. Bernard Hodes Group, Inc.*, 10 N.Y.3d 609, 861 N.Y.S.2d 246,

    891 N.E.2d 279 (2008)………………………………………………16, 17

*Schwind v. EW & Assoc. Inc.*, F. Supp. 2d 560 (S.D.N.Y 2005)…………………………….…5

*Torres v. Gristede's Operating Corp.*, 628 F.Supp.2d 447 (S.D.N.Y. 2008)………………..18–20

*Walling v. Youngerman-Reynolds Hardware Co.*, 325 U.S. 419 (1945)…………………………6

**Statutes**

29 U.S.C. 207(i)……………………………………………………………………………5, 14

29 U.S.C. § 206…………………………………………………………………………...6

28 U.S.C. § 1367(c)(3)…………………………………………………………………...18

29 U.S.C. § 215(a)(3)……………………………………………………………………18

NY Labor § 195…………………………………………………………………………18

**Rules and Regulations**

29 C.F.R. §779.419……………………………………………………………………..6

29 C.F.R. § 779.104……………………………………………………………………6

12 NYCRR 142-2.1……………………………………………………………………6

12 NYCRR 142-2.2…………………………………………………………………...14

## PRELIMINARY STATEMENT

Defendants VisionPro Communications Corp., VisionPro Corp., Kevin Silvar, and Joseph Romano ("Defendants") respectfully submit this Memorandum of Law, together with the supporting of Declaration of Jeffery A. Meyer ("Meyer Decl."), and exhibits and affidavits annexed thereto, and the supporting Declaration of Joseph Romano ("Romano Decl."), and the exhibits annexed thereto, in support of their motion for summary judgment pursuant to Rule 56 of the Federal rules of Civil Procedure. The undisputed material facts in Defendants' Local Rule 56.1 Statement of Material Facts ("56.1") is filed herewith and incorporated herein by reference.

Defendants submit that the undisputed statements of material fact and the applicable law governing the claims for unpaid wages of Plaintiffs Daren Watson and Cyril Lewis (collectively, "Plaintiffs") and the claim of unlawful retaliation by Plaintiff Daren Watson compel dismissal of Plaintiffs' claims. First, Plaintiffs, as employees working on a commission basis, are properly exempt employees under the Fair Labor Standards Act and the New York Labor law; further, in any event have been properly compensated for all hours work, including overtime premiums for hours worked in excess of forty during a workweek. Second, Plaintiffs' claims that their employer made unlawful deductions for lost or stolen equipment is incorrect because any such deductions made against unearned commissions and made pursuant to an express agreement between the parties are permissible by law. Third, Plaintiffs' claim that they were not provided a statutorily required notice regarding their payment of wages, as required by New York Labor Law § 195, is false, as Plaintiffs were provided those notices; further, given the fact that the claims which this Honorable Court has original jurisdiction over are meritless, the Court should not exercise supplemental jurisdiction over Plaintiffs' uniquely state law claim. And Fourth, Plaintiff Daren Watson cannot establish a *prima facie* claim for retaliation, and Defendants

1

otherwise can demonstrate a legitimate, non-discriminatory business reason for his termination. On these grounds, and as further explained below, this Honorable Court should grant Defendants' summary judgment as against all of the claims set forth in Plaintiffs' Amended Collective and Class Action Complaint, [D.E. 15], and likewise dismiss the pending Conditionally Certified Collective Action.

## PROCEDURAL HISTORY

Plaintiffs Daren Watson and Cyril Lewis, on behalf of themselves and on behalf of all other persons similarly-situated, filed their Collective and Class Action Complaint, dated January 30, 2013 on February 6, 2013 [D.E. 1]. Plaintiffs alleged violations of the Fair Labor Standards Act and the New York Labor Law in the alleged failure to pay overtime wages, violations of New York Labor Law in the alleged improper deductions from wages for lost or stolen equipment, and violations of the New York Labor Law in the alleged failure to provide notices pursuant to § 195 of the New York Labor Law. Defendants filed their Answer on April 2, 2013. [D.E. 14].

Plaintiffs subsequently filed an Amended Collective and Class Action Complaint, dated April 3, 2013, on April 3, 2013. In the Amended Collective and Class Action Complaint, Plaintiffs set forth six causes of action: (1) violations of the Fair Labor Standards Act for the alleged failure to pay overtime wages; (2) violations of the New York Labor Law for the alleged failure to pay overtime wages; (3) violations of the New York Labor law for alleged improper deductions from wages for lost or stolen equipment; (4) violations of the New York Labor Law in the alleged failure to provide notices pursuant to § 195 of the New York Labor Law; (5) on behalf of Plaintiff Daren Watson, violations of § 215 of the Fair Labor Standards Act for the alleged unlawful retaliation against Plaintiff Watson; and (6) on behalf of Plaintiff Daren

Watson, violations of § 215 of the New York Labor Law for the alleged unlawful retaliation against Plaintiff Watson.  Defendants filed their Answer on April 17, 2013. [D.E. 17].

An Initial Conference was held in the matter on July 8, 2013.  [D.E. 20].  Discovery concluded on May 14, 2014.  [*See* April 15, 2014 Electronic Order].

On the July 14, 2014, Magistrate Judge Brown granted Plaintiffs' application for collective certification of a collective action.  [D.E. 47].  Multiple persons who purportedly believe they are similarly-situated to Plaintiffs have filed and continue to file consent forms to join the collective action.  [D.E. 56–89, 91–121].

## BRIEF STATEMENT OF FACTS

VisionPro Corp. (hereinafter "VisionPro") is the successor in operations to VisionPro Communications.  56.1 ¶ 1.  VisionPro provides data, voice, fiber & cable installation, repair, maintenance, and problem solving services for residential and commercial customers of telecommunication providers.    56.1  ¶  2.    VisionPro's  largest  current  contracted telecommunication provider whom it provides services for is Cablevision Systems Corporation. ("Cablevision"). *Id*.

Plaintiff Daren Watson began working for VisionPro in February 2011, and Plaintiff Cyril Lewis began working for VisionPro in October 2011.  56.1 ¶¶ 36, 63.  Each was employed as a "technician."  56.1 ¶¶ 37, 64.  As technicians, Plaintiffs were tasked with performing various services in the field for residential and commercial customers of Cablevision.  Romano Decl., ¶ 5.  In connection with these services, Plaintiffs, as well as all other technicians, were provided a percentage, whose range depended on the technician's skill level, of payment earned by VisionPro and paid by Cablevision for the work performed.  56.1 ¶ 9.  Following a 2011 wage

and hour action, Defendant VisionPro treated its technicians as employees exempt from overtime requirements and subject to earnings on commissions.  56.1 ¶¶ 6–8.  Thereafter, VisionPro developed a procedure to ensure all technicians would receive compensation, called the "Minimum Commission Period Payment," for at least all the hours worked during each weekly pay period if their earnings from commission were less than the hourly earnings. 56.1 ¶¶ 19, 21, 23.  Plaintiffs dispute the terms of their employment and allege they were continually paid on a piece-rate basis.  Meyer Decl. Ex A, Am. Compl. ¶¶ 80, 86.

Following an altercation between Plaintiff Daren Watson and a customer, 56.1 ¶ 49, in a meeting with Defendant Kevin Silvar on February 11, 2013, Plaintiff Daren Watson was terminated for his behavior and conduct.  *See* 56.1 ¶¶ 51–58.   Defendant Silvar was unaware that Plaintiff Watson had instituted an action when he terminated Plaintiff Watson.  56.1 ¶ 60.

## STANDARD OF REVIEW

Summary judgment is proper when a movant demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A genuine issue of fact means that "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To survive summary judgment, the opposing party must establish a genuine issue of material fact and "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," since "mere conclusory allegations or denials cannot by themselves create a genuine issue of material fact where none would otherwise exist."  *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (citation omitted).

4

**ARGUMENT**

**POINT I: PLAINTIFFS' CLAIMS FOR UNPAID OVERTIME OR PREMIUM COMPENSATION MUST BE DISMISSED**

    **A.    Plaintiffs Were Exempt from Overtime Because They Were a Paid on a Commission Basis.**

Employees of a retail or service establishment who are paid on a commission basis are exempt from the overtime pay provisions of the Fair Labor Standards Act ("FLSA"). *See* 29 U.S.C. 207(i). Pursuant to Section 7(i) of the FLSA, an employer can establish that an employee falls within this statutory exemption if: (1) the employee's regular rate of pay exceeded one and one-half time the minimum hourly rate; (2) more than half of the employee's compensation for a representative period (not less than one month) represents commissions on goods or services; and (3) the employee was employed by a retail or service establishment. *See Schwind v. EW & Assoc. Inc.*, F. Supp. 2d 560, 563 (S.D.N.Y 2005).

In this action, the incontrovertible evidence demonstrates that Plaintiffs' employment with VisionPro satisfies all of these requirements and thus, their overtime claims, as well as the claims of anyone they allege they are similarly-situated with, under the FLSA and the New York Labor Law must be dismissed as a matter of law. As such, this case must join the litany of analogous cases which have found cable technicians or cable installers to be commissioned salespersons and otherwise exempt from applicable overtime requirements. *See Johnson v. Wave Comm GR LLC*, 4 F.Supp.3d 423 (N.D.N.Y. 2014); *Owopetu v. Nationwide CATC Auditing Servs., Inc.* 10-cv-18, 2011 WL 883703 (D.Vt. Mar. 11, 2011) (hereinafter "*Owopetu I*") (denying summary judgment without prejudice, and granting its renewed application in *Owopetu v. Nationwide CATC Auditing Servs., Inc.* 10-cv-18, 2011 WL 4433159 (D.Vt. Sept. 21, 2011) ("hereinafter *Owopetu II*"); *Jones v. Tucker Commc'ns, Inc.*, 11-cv-398, 2013 WL 6072966

(M.D.Ga. Nov. 18, 2013); *Horn v. Digital Cable & Communications*, *Inc.*, 06-cv-325, 2009 WL

4042407 (N.D.Ohio Feb. 11, 2009)

    1.  *Plaintiffs' Regular Rate of Pay is in Excess of One and One-Half Times The Minimum Hourly Rate.*

For an employee to qualify as an exempt due to compensation on a commission basis, the

employee's regular rate of pay must be in excess of one and one-half times the applicable

minimum wage.  *See* 29 U.S.C. §207(i).  As explained by the Supreme Court, the regular rate of

pay is "the hourly rate actually paid the employee for the normal, non-overtime workweek for

which he is employed" and "by its very nature must reflect all payments which the parties have

agreed shall be received regularly during the workweek, exclusive of overtime payments." 29

C.F.R. §779.419 (quoting *Walling v. Youngerman-Reynolds Hardware Co.*, 325 U.S. 419, 424

(1945)).  To calculate this rate, an employee's straight time earnings (including base pay and

commissions), are divided by hours worked.  *See* 29 C.F.R. § 779.419; 29 C.F.R. § 779.104; *see*

*also Johnson*, 4 F.Supp.3d at 444 ("The regular rate of pay is computed by taking an employee's

total weekly earnings divided by his total hours worked during that week. If this number exceeds

one and one-half times the federal minimum hourly wage, then the final requirement of the retail

or service establishment exemption is satisfied.").

Here, each of Plaintiffs' regular rates of pay would have been greater than $10.88 during

virtually all of their pay periods.  Romano Decl, ¶ 17.  During Plaintiffs' employment, the

minimum hourly rate was $7.25 per hour.  *See* 29 U.S.C. § 206; 12 NYCRR 142-2.1.  As set

forth in the calculations below, according to the Weekly VisionPro Commission Summaries,

Romano Decl., Ex. H & I, both Plaintiffs' Regular Rate of Pay is as follows:

**Daren Watson**

| Pay Period | Hours Worked | Weekly Earnings | Regular Rate of Pay |
|---|---|---|---|
| 2/13/12 – 2/19/12 | 59 | $1,434.25 | $24.31 |
| 2/20/12 – 2/26/12 | 51.25 | $1,012.13 | $19.75 |
| 2/27/12 – 3/4/12 | 58 | $1,047.86 | $18.07 |
| 3/12/12 – 3/18/12 | 50.5 | $1,120.81 | $19.32 |
| 3/19/12 – 3/25/12 | 48 | $1,085.34 | $22.61 |
| 3/26/12 – 4/1/12 | 48 | $773.83 | $16.12 |
| 4/2/12 – 4/8/12 | 61.75 | $1,306.91 | $21.16 |
| 4/9/12 – 4/15/12 | 46.5 | $804.42 | $17.29 |
| 4/16/12 – 4/22/12 | 69.25 | $1,284.86 | $18.55 |
| 4/23/12 – 4/29/12 | 35.5 | $843.49 | $23.76 |
| 4/30/12 – 5/6/12 | 31.5 | $761.26 | $24.17 |
| 5/7/12 – 5/13/12 | 42.25 | $718.69 | $17.01 |
| 5/14/12 – 5/20/12 | 48.08 | $944.44 | $19.64 |
| 5/21/12 – 5/27/12 | 52 | $1,272.20 | $24.47 |
| 5/28/12 – 6/3/12 | 49 | $851.55 | $17.38 |
| 6/4/12 – 6/10/12 | 54.4 | $856.87 | $15.75 |
| 6/11/12 – 6/17/12 | 44.5 | $780.42 | $17.54 |
| 6/18/12 – 6/24/12 | 54.5 | $907.47 | $16.65 |
| 6/25/12 – 7/1/12 | 46.53 | $664.67 | $14.28 |
| 7/2/12 – 7/8/12 | 40.75 | $670.66 | $16.46 |
| 7/9/12 – 7/15/12 | 60.98 | $909.56 | $14.92 |
| 7/16/12 – 7/22/12 | 67.48 | $931.38 | $13.80 |
| 7/23/12 – 7/29/12 | 63.43 | $842.55 | $13.28 |
| 7/30/12 – 8/5/12 | 54.5 | $1,026.16 | $18.83 |
| 8/6/12 – 8/12/12 | 71.83 | $812.39 | $11.31 |
| 8/13/12 – 8/19/12 | 67.25 | $819.03 | $12.18 |
| 8/20/12 – 8/26/12 | 57.5 | $761.81 | $13.25 |
| 8/27/12 – 9/2/12 | 70.56 | $1,927.84 | $27.32 |
| 9/3/12 – 9/9/12 | 65.5 | $2,005.75 | $30.62 |
| 9/10/12 – 9/16/12 | 62.5 | $1,690.51 | $27.05 |
| 9/17/12 – 9/23/12 | 69.25 | $1,743.50 | $25.18 |
| 9/24/12 – 9/30/12 | 59.5 | $1,532.79 | $25.76 |
| 10/1/12 – 10/7/12 | 73 | $1,426.32 | $19.54 |
| 10/8/12 – 10/14/12 | 62.75 | $2,169.61 | $34.58 |
| 10/15/12 – 10/21/12 | 69.75 | $1,542.66 | $22.12 |
| 10/22/12 – 10/28/12 | 60 | $1,131.53 | $18.86 |
| 10/29/12 – 11/4/12 | 45.75 | $1,122.56 | $24.54 |
| 11/5/12 – 11/11/12 | 47 | $1,340.96 | $28.53 |
| 11/12/12 – 11/18/12 | 72.5 | $1,824.50 | $25.17 |
| 11/19/12 – 11/25/12 | 35.86 | $1,043.22 | $29.09 |
| 11/26/12 – 12/2/12 | 48 | $931.74 | $19.41 |

| | | | |
|---|---|---|---|
| 12/3/12 – 12/9/12 | 59.5 | $1,480.76 | $24.89 |
| 12/10/12 – 12/16/12 | 72.8 | $824.50 | $11.33 |
| 12/17/12 – 12/23/12 | 55 | $722.91 | $13.14 |
| 1/14/13 – 1/20/13 | 50.5 | $452.45 | $8.96 |
| 1/21/13 – 1/27/13 | 43.5 | $409.09 | $9.40 |
| 1/28/13 – 2/3/13 | 61.6 | $657.01 | $10.67 |
| 2/4/13 – 2/10/13 | 50.75 | $481.89 | $9.50 |

**Cyril Lewis**

| Pay Period | Hours Worked | Weekly Earnings | Regular Rate of Pay |
|---|---|---|---|
| 11/7/11 – 11/13/11 | 38.83 | $770.94 | $19.85 |
| 11/14/11 – 11/20/11 | 42.39 | $659.34 | $15.55 |
| 11/21/11 – 11/27/11 | 27.43 | $563.16 | $20.53 |
| 11/28/11 – 12/4/11 | 39.42 | $875.24 | $22.20 |
| 12/6/11 – 12/11/11 | 33.46 | $851.77 | $25.46 |
| 12/12/11 – 12/18/11 | 26.66 | $487.61 | $18.29 |
| 12/19/11 – 12/25/11 | 40.69 | $858.18 | $21.09 |
| 12/26/11 – 1/1/12 | 41.48 | $852.45 | $20.55 |
| 1/2/12 – 1/8/12 | 44.36 | $961.84 | $21.68 |
| 1/9/12 – 1/15/12 | 40.96 | $984.75 | $24.04 |
| 1/16/12 – 1/22/12 | 40.35 | $1,018.55 | $25.24 |
| 1/23/12 – 1/2912 | 45.47 | $701.90 | $15.44 |
| 1/30/12 – 2/5/12 | 52.68 | $1,279.26 | $24.29 |
| 2/6/12 – 2/12/12 | 48.52 | $1,061.21 | $21.87 |
| 2/13/12 – 2/19/12 | 55.61 | $1,122.94 | $20.19 |
| 2/20/12 – 2/26/12 | 53.86 | $1,054.42 | $19.58 |
| 2/27/12 – 3/4/12 | 53.22 | $1,235.80 | $23.22 |
| 3/12/12 – 3/18/12 | 37.28 | $749.25 | $20.10 |
| 3/19/12 – 3/25/12 | 34.33 | $968.50 | $28.21 |
| 3/26/12 – 4/1/12 | 49.13 | $985.43 | $20.06 |
| 4/2/12 – 4/8/12 | 61.49 | $1,309.17 | $21.29 |
| 4/9/12 – 4/15/12 | 46.91 | $897.13 | $19.12 |
| 4/16/12 – 4/22/12 | 64.31 | $1,072.32 | $16.67 |
| 4/23/12 – 4/29/12 | 62.04 | $949.43 | $15.30 |
| 4/30/12 – 5/6/12 | 16.5 | $242.57 | $14.70 |
| 5/7/12 – 5/13/12 | 31.82 | $507.58 | $15.95 |
| 5/14/12 – 5/20/12 | 65.25 | $822.70 | $12.61 |
| 5/21/12 – 5/27/12 | 68.5 | $1,019.70 | $14.89 |
| 5/28/12 – 6/3/12 | 64.47 | $1,229.52 | $19.07 |
| 6/4/12/ – 6/10/12 | 62.77 | $996.06 | $15.87 |
| 6/11/12 – 6/17/12 | 62.17 | $1,055.03 | $16.97 |
| 6/18/12 – 6/24/12 | 72.62 | $1,084.58 | $14.94 |
| 6/25/12 – 7/1/12 | 67.01 | $1,049.16 | $15.66 |

| | | | |
|---|---|---|---|
| 7/2/12 – 7/8/12 | 73.01 | $1,050.07 | $14.38 |
| 7/9/12 – 7/15/12 | 68.76 | $812.04 | $11.81 |
| 7/16/12 – 7/22/12 | 74.62 | $1,186.84 | $15.91 |
| 7/23/12 – 7/29/12 | 52.71 | $854.37 | $16.21 |
| 7/30/12 – 8/5/12 | 67.15 | $1,071.55 | $15.96 |
| 8/6/12 – 8/12/12 | 55.23 | $837.21 | $15.16 |
| 8/13/12 – 8/19/12 | 68.58 | $1,138.93 | $16.61 |
| 8/20/12 – 8/26/12 | 50.7 | $1,837.48 | $36.24 |
| 8/27/12 – 9/2/12 | 51.04 | $833.61 | $16.33 |
| 9/3/12 – 9/9/12 | 65.92 | $1,116.97 | $16.94 |
| 9/10/12 – 9/16/12 | 59.46 | $961.95 | $16.18 |
| 9/17/12 – 9/23/12 | 67.35 | $996.55 | $14.80 |
| 9/24/12 – 9/30/12 | 57.35 | $837.48 | $14.60 |
| 10/1/12 – 10/7/12 | 64.43 | $878.97 | $13.64 |
| 10/8/12 – 10/14/12 | 59.54 | $851.06 | $14.29 |
| 10/15/12–10/21/12 | 59.58 | $744.64 | $12.50 |
| 10/22/12 – 10/28/12 | 45.04 | $561.94 | $12.48 |
| 10/29/12 – 11/4/12 | 42.35 | $820.97 | $19.39 |
| 11/5/12 – 11/11/12 | 41.29 | $888.49 | $21.52 |
| 11/12/12 – 11/18/12 | 66.87 | $953.80 | $14.26 |
| 11/19/12 – 11/25/12 | 58.13 | $922.42 | $15.87 |
| 11/26/12 – 12/2/12 | 68.56 | $881.67 | $12.86 |
| 12/3/12 – 12/9/12 | 53.59 | $835.46 | $15.59 |
| 12/10/12 – 12/16/12 | 57.26 | $861.02 | $15.04 |
| 12/17/12 – 12/23/12 | 56.48 | $899.53 | $15.93 |
| 12/24/12 – 12/30/12 | 43.58 | $733.60 | $16.83 |
| 12/31/12 – 1/6/13 | 47.61 | $663.52 | $13.94 |
| 1/7/13 – 1/13/13 | 59.27 | $766.63 | $12.93 |
| 1/14/13 – 1/20/13 | 43.81 | $822.18 | $18.77 |
| 1/21/13 – 1/27/13 | 58.43 | $840.22 | $14.38 |
| 1/28/13 – 2/3/13 | 56.12 | $684.88 | $12.20 |
| 2/4/13 – 2/10/13 | 41.97 | $571.71 | $13.62 |
| 2/11/13 – 2/17/13 | 61.58 | $799.65 | $12.99 |
| 2/18/13 – 2/24/13 | 53.85 | $770.84 | $14.31 |
| 2/25/13 – 3/3/13 | 59.53 | $918.74 | $15.43 |
| 3/4/13 – 3/10/13 | 47.1 | $610.53 | $12.96 |
| 3/11/13 – 3/17/13 | 50.94 | $661.18 | $12.98 |
| 3/18/13 – 3/24/13 | 33.67 | $513.83 | $15.26 |
| 4/8/13 – 4/14/13 | 56.9 | $752.96 | $13.23 |
| 4/15/13 – 4/21/13 | 51.11 | $712.64 | $13.94 |
| 4/22/13 – 4/28/13 | 36.19 | $560.53 | $15.49 |
| 4/29/13 – 5/5/13 | 34.75 | $587.50 | $16.91 |
| 5/6/13 – 5/12/13 | 19.39 | $257.95 | $13.30 |
| 6/10/13 – 6/16/13 | 8.36 | $95.86 | $11.47 |
| 6/17/13 – 6/23/13 | 34.83 | $504.23 | $14.48 |

| 6/24/13 – 6/30/13 | 41.95 | $550.67 | $13.13 |
| 7/1/13 – 7/7/13 | 44.8 | $637.43 | $14.23 |
| 7/8/13 – 7/14/13 | 6.7 | $54.27 | $8.10 |

Plaintiffs each qualify for this exemption as their respective regular rate of pay exceeded $10.88 per hour for each workweek, except for a few pay periods in which they worked (where they otherwise were paid at least for the hours worked, as discussed in subsection B, *infra*).

2. *More Than Half of Plaintiffs' Compensation Represents Commissions on Goods or Services.*

Plaintiffs' entire compensation during each pay period, except for incidental payments such as for out of state lodging expenses, constitutes payments on commissions for tasks they performed. 56.1 ¶ 25. Plaintiffs' Weekly VisionPro Commission Summaries note Plaintiffs' respective "Minimum Commission Payment Period" for each of their workweeks. 56.1 ¶ 19. This amount is essentially the guaranteed minimum that Plaintiffs would be paid for the hours they worked in the event that their respective commissions did not provide earnings that compensated Plaintiffs for all hours worked, as suggested in the Technician Commission Agreements and VisionPro's Employee Handbooks for Technicians. 56.1 ¶¶ 21, 23. However, each Plaintiff's gross compensation during each pay period generally matched the credits earned as part of their commissions, whereas one dollar equaled one credit. 56.1 ¶¶ 13–15; *see also* 56.1 ¶ 71.

Inasmuch as Plaintiffs may maintain their baseless contention that they were paid on a piece-rate basis, Meyer Decl., Ex. A, Am. Comp. ¶ 86, Plaintiffs' position reflects a profound ignorance on their part. *See* 56.1 ¶¶ 42, 44, 67–68. Plaintiffs each signed commission agreements explaining the methods by which they would be compensated. 56.1 ¶¶ 43, 70. Plaintiffs also each signed an acknowledgement that they received and understood the VisionPro Corp. Employee Handbook for Technicians. 56.1 ¶¶ 45, 73. VisionPro paid a percentage of

10

what they earned from Cablevision based on the tasks performed by the Plaintiffs, 56.1 ¶ 10, and Plaintiffs' gross compensation fluctuated with the amount of work performed and the type of work performed.  *See* 56.1 ¶¶ 18, 66, 72, 75.  Such a compensation system is does not constitute a piece-rate system.  *See Horn*, 2009 WL 4042407, at *5 (where installing and servicing cable technicians earned a percentage of the value of each service performed, and their weekly income therefore fluctuated based on volume and customer demand, plaintiffs did not perform traditional piece rate work and their compensation fell "squarely within the policy rationale behind the retail service commission employee exemption").  Moreover, even were Plaintiff's contentions given credence, and VisionPro's compensation system could be construed as flat-rate pay vis-à-vis piece-rate compensation for various services performed by technicians, such an interpretation does not necessarily disqualify that compensation as paid under a proper commission system. *See Moore v. Advanced Cable Contractors*, Inc., 12–cv–00115 (RWS), 2013 WL 3991966 (N.D.Ga., Aug 1, 2013) (where technicians who installed cable, internet, and phone equipment were found to participate in a proper commission system):

> The incentive of being paid a flat rate for work regardless of how long it takes presumably increases efficiency, which would increase the number of customers the employer can serve. This in turn increases the amount of work available to employees, so their prospective potential earnings are still proportional, although not as an exact percentage, to their employers' potential earnings. In accordance with the finding that Defendants' compensation scheme was commission-based, the Court finds Defendants' Motion for Partial Summary Judgment [136] is due to be GRANTED.

2013 WL 3991966, at *5

Conversely, inasmuch as Plaintiffs could suggest VisionPro's compensation system was not based upon piece-work but nonetheless was improper since Plaintiffs only earned credits as a

11

percentage of what Cablevision has agreed to pay VisionPro, 56.1 ¶ 9, and not what Cablevision ultimately charges its end users, courts have found similar business relationships between cable television service providers and employers of cable installers or cable technicians acceptable in the context of the commissioned salesperson exemption. *See, e.g., Owopetu I*, 2011 WL 883703, at *4.

Plaintiffs therefore each qualify for this exemption since more than half of their compensations represent commissions on their work.

3. *VisionPro Was a Retail or Service Establishment.*

Under the FLSA and its accompanying regulations, a "retail or service establishment" is defined as "an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." *See, e.g., Johnson*, 4 F.Supp.3d at 434.

Here, VisionPro derives 100% of its revenues from cable television installation and maintenance services, and such services are not available for resale. 56.1 ¶ 3. The services that VisionPro provides end users do not constitute services for resale because there is no reselling of the services by the end users. 56.1 ¶ 4.

As to the question whether VisionPro's services are recognized as retail services in an industry, that question is typically resolved by courts. *See Johnson,* 4 F.Supp.3d at 436. Courts have used a two-prong test to aid their determination of whether a business is recognized as retail: (1) the establishment must be part of an industry in which there is a "retail concept"; and (2) the establishment's services must be recognized as retail in that particular industry. *Id*. VisionPro clearly passes this test.

First, with regard to the existence of a "retail concept," VisionPro's technicians' tasks include installing, setting up, servicing, and trouble-shooting cable television, internet, and other communications equipment, *see* 56.1 ¶ 2, much like the Plaintiffs work in *Johnson*. *Johnson*, 4 F.Supp.3d at 439.   These are tasks regularly performed in the telecommunications industry, an industry with a retail concept.  Id. at 440 (finding in the *Johnson* case that cable installers' duties are appropriately classified in retail concept of the telecommunications industry).

Second, with regard to recognition as retail in that particular industry, courts must consider the understandings of persons with knowledge of the recognized industry classifications.   *Id.*; *see also Owopeti II*, 2011 WL 4433159, at *4 (explaining that court must first look to evidence as to how people in the industry view the establishment).  Here, Defendants submit the Affidavit and its attached "Summary of Experience and Qualifications" of Joshua N. Koenig, an witness with substantial knowledge of telecommunications and broadband technologies and business operations.   *See* Meyer Decl, Ex. T, Aff. of Joshua N. Koenig (hereinafter, "Koenig Aff.") ¶ 1 and "Summary of Experience and Qualifications" annexed thereto.  In his Affidavit, Koenig provides an explanation that, from his detailed knowledge and many years of experience, "the employment role performed by cable television / broadband services installers and technicians when visiting the end use premises of cable TV and broadband customers is properly described as a 'retail' business relationship." Koenig Aff. ¶ 4.  Koenig notes that cable television and broadband installers and technicians who deal directly with residential and commercial end use customers are acting in direct support of the principal retail service providers such as Cablevision, and that these service providers are recognized and treated as retail entities in many formal contexts.  Koenig Aff. ¶ 5.

Defendants also respectfully direct the Court, as the defendants in *Johnson* did, to the industry testimony submitted in *Jones* and *Owopeti II*, in support of their argument that the installation, maintenance, and trouble-shooting services which VisionPro's technicians provided end users are retail in nature:

> Here, the parties do not dispute that [Defendant] Wave Comm installers install, service, and repair equipment for Time Warner's customers in connection with their cable, internet, and telephone services. These services fall within the category of services the affiants in Owopetu II and Jones list as being considered retail.

*Johnson*, 4 F.Supp.3d at 441.

In light of the foregoing, Plaintiffs were properly exempted from overtime requirements under federal law pursuant to 29 U.S.C. 207(i), and Plaintiffs were properly exempt from overtime requirement under New York state law pursuant to 12 NYCRR 142-2.2. *See also Chenensky v. New York Life Ins. Co.*, 07-cv-11504 (WHP), 2009 WL 4975237, at *5 (S.D.N.Y. Dec. 22, 2009) ("New York law governing overtime pay is defined and applied in the same manner as the FLSA and includes an exemption for outside salespersons."); *Johnson*, 4 F.Supp.3d at 434 (noting that if FLSA 207(i) exemption applied, defendants will not be obligated to pay overtime wages under the New York Labor Law). Therefore, Plaintiffs claims, and the claims of any persons they claim they are similarly-situated with, for unpaid overtime must be dismissed.

**B.    Plaintiffs Were Otherwise Compensated for All Hours Worked, Including Hours Worked in Excess of Forty Hours Each Week.**

Assuming, *arguendo,* that Plaintiffs were not exempt from overtime payments (which Defendants do not concede), Plaintiffs, and all current or former VisionPro employees they

allege they are similarly situated with, were properly paid for all hours worked in excess of forty hours each week.

As part of the calculation for the "Minimum Commission Period Payment," Plaintiffs' regular rate for all hours worked under forty during their respective employments was $8.10, and Plaintiffs' overtime rate for all hours worked in excess of forty was $12.15.   56.1 ¶ 21. According to each of the Plaintiff's Weekly Vision Pro Commission Summaries, they received a gross amount of compensation during each workweek equal to or greater than the Minimum Commission Period Payment in each of their pay periods.  56.1 ¶ 20.  Accordingly, Plaintiffs, and all employees they allege that they are similarly-situated to, were at the very least compensated for all hours worked, inclusive of all hours worked in excess of forty hours per workweek.

To the extent that Plaintiffs may suggest that they were not compensated for their unreported working hours, Plaintiffs must prove Defendants had actual or constructive knowledge of that work being performed.  *See Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011) (noting that plaintiff must produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference).   Here, Defendants were repeatedly informed that of their obligation for accuracy in their reporting of hours.  Plaintiffs signed acknowledgements that they read and understood the terms of VisionPro's Employee Handbooks for Technicians, which expressly state that technicians are responsible for accurately reporting all hours worked and are prohibited from working unreported hours.  56.1 ¶¶ 28, 45, 73.  Further, they were responsible for filling out their daily work sheets and signing them under the statement "I certify that this daily work sheet reflects a true actual representation of all jobs and hours worked by me on the work date specified.  I also certify that I have taken my

15

mandatory 60 minutes [*sic*] break for the work date specified."   56.1 ¶¶ 29.   Plaintiffs each

signed for the written "Policy on Recording Hours Worked" which stated that each technician

must take a half-hour lunch break, 56.1 ¶¶ 31, 47, 74, and that he or she is to immediately notify

the office if he or she does not so an adjustment can be made, and which further state:

> All technicians who take our trucks home and do not return to our
> facility at the end of the work day are required to call our dispatch
> office and report the end of their last job.   All technicians who
> bring our trucks back to our facility at the end of the work day are
> required to scan themselves out at that time.   These procedures
> must be followed and there will be no exceptions.

56.1 ¶ 32.   Moreover, Plaintiffs were informed in numerous meetings that they were prohibited

from skipping lunch. 56.1 ¶ 33.   Finally, when Cyril Lewis skipped lunch, he conceded that they

never told his manager. 56.1 ¶ 34.

As Plaintiffs were actually compensated for hours worked in excess for forty hours,

Plaintiff claims for unpaid overtime, and claims made on behalf of similarly-situated persons,

fail and must be dismissed.

### POINT II:  PLAINTIFFS' CLAIMS FOR UNLAWFUL DEDUCTIONS FROM WAGES MUST BE DISMISSED

Plaintiffs' claims that they were subject to deductions made for lost and stolen

equipment, Meyer Decl., Ex. A, Am. Compl ¶¶ 105–107, fail in light of the fact that purported

deductions complained of by Plaintiffs were legally permissible given that they were adjustments

made in the calculations of the Plaintiffs' commission-based wages.   Deductions from unearned

commissions (here, "Total Gross Credits" listed on each of Plaintiff's Weekly Vision Pro

Commission Summaries) are permissible and are not violative of New York Labor Law Section

§ 193 where there exists an express agreement concerning the same. *See Pachter v. Bernard*

16

*Hodes Group, Inc.*, 10 N.Y.3d 609, 861 N.Y.S.2d 246, 891 N.E.2d 279 (2008) (finding the statute governing deductions from wages did not prevent an employee and his or her employer from structuring the employee's compensation formula so that the employee's commission would be deemed earned only after specific deductions were taken from his or her percentage of gross billings); *see also Chenensky*, 2009 WL 4975237, at *7 (noting that where an employee is paid by commission, New York Labor Law Section § 193 does not prohibit deductions if they were made before the commissions were earned, and finding the agreement between the parties ambiguous as to when commissions were "earned") (citing *Pachter*).  In *Patcher*, the New York Court of Appeals found that notwithstanding the lack of a written agreement, the parties course of dealings provided ample support for the conclusion that there was an implied contract under which the final computation of the commissions earned by the plaintiff depended on first making adjustments for non-payments by customers and the cost of plaintiff's assistant, as well as miscellaneous work-related expenses. *Pachter*, 10 N.Y.3d at 618.  In the case at bar, there exists substantial evidence adduced that an express, written agreement between each of the Plaintiffs and VisionPro existed in which unearned commissions were subject to certain specified deductions.  See 56.1 ¶¶ 16, 24.

In light of the foregoing, Plaintiffs' claims for unlawful deductions from wages must be dismissed.

**POINT III:   PLAINTIFFS' CLAIM OF FAILURE TO PROVIDE STATUTORY WAGE NOTICE MUST BE DISMISSED**

Plaintiffs' claims that they improperly were not provided notices required by New York Labor Law § 195, detailing each of Plaintiff's rate of pay, basis of their rate of pay, and other information, Meyer Decl., Ex. A, Am. Compl ¶ 113, are incorrect and must fail as a matter of

law.  Each Plaintiff was provided and signed for receipt of a Notice and Acknowledgement of Wages detailing the name and address of the employer, each of Plaintiff's respective regular basis of pay, pay days, and when applicable rate of pay, and overtime rate of pay, consistent with strictures of the New York Labor Law. *See* NY Labor § 195; 56.1 ¶ 76.   Accordingly, Plaintiffs' claims should be dismissed

Moreover, in alternative relief sought, to the extent that Plaintiffs' federal law claims for unpaid wages and retaliation lack merit and otherwise warrant dismissal, Defendants respectfully request that should Plaintiffs' federal law claims be dismissed that the Court also dismiss the claims without prejudice and decline to exercise its supplemental jurisdiction over those Plaintiffs' state law § 195 claims pursuant to 28 U.S.C. § 1367(c)(3).

### POINT IV:  PLAINTIFF DAREN WATSON'S CLAIM FOR RETALIATION MUST BE DISMISSED

The undisputed facts and circumstances surrounding Plaintiff Daren Watson's termination and separation from VisionPro does support his claim for retaliation for engaging in his purported protective activity in asserting his statutory claims in a legal action.  Meyer Decl., Ex. A, Am. Compl. ¶¶ 116, 120.

The FLSA makes it unlawful for an employer "to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA] ..." 29 U.S.C. § 215(a)(3). "At the summary judgment stage, courts address FLSA retaliation claims under the familiar "burden-shifting" framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)." *Torres v. Gristede's Operating Corp.*, 628 F.Supp.2d 447, 471 (S.D.N.Y. 2008).  Courts may address alleged violations of the New York

Labor Law's anti-retaliation section using the same analysis used to address purported violations of the FLSA. *See Torres*, 628 F.Supp.2d at 471, fn. 18 (noting that NY Labor Law § 195 and 29 U.S.C. § § 215(a)(3) are "nearly identical" provisions and stating that its analysis of under the FLSA is also applicable under the New York Labor Law).

In order to establish a *prima facie* case of retaliation under the FLSA, a plaintiff must show "(1) participation in protected activity known to the defendant; (2) an employment action disadvantaging the plaintiff; and (3) a causal connection between the protected activity and the adverse employment action." *Mullins v. City of N.Y.,* 554 F.Supp.2d 483, 488 (S.D.N.Y.2008). Here, Plaintiff Daren Watson has not and cannot sufficiently establish a *prima facie* case for retaliation. More specifically, Plaintiff cannot show that the person who decided to terminate him, Defendant Kevin Silvar, had any knowledge concerning Plaintiff Watson's alleged protected activity when he terminated Plaintiff, or that such knowledge caused him to terminate Plaintiff Watson. Defendant Silvar did not have any knowledge that Plaintiff instituted a legal action prior to the termination. 56.1 ¶ 60. Defendant Silvar himself did not even receive a copy of the Complaint until February 19, 2014, well after Plaintiff Daren Watson's February 11, 2014 termination. 56.1 ¶ 59. Further, Defendant Joseph Romano did not discuss the action or any allegations of Daren Watson with Defendant Silvar prior to February 11, 2014, and he had no input regarding the meeting Defendant Silvar set up with Plaintiff Watson. 56.1 ¶ 62.

Assuming, *arguendo*, that Plaintiff Watson is able to establish his *prima facie* case of retaliation, which Defendants maintain he cannot, the burden shifts to Defendants to demonstrate a legitimate, non-discriminatory reason for the employment action. *See Mullins v. City of N.Y.,* 626 F.3d 47, 53 (2d Cir. 2010). Here, Defendants very capably carry that burden. Plaintiff had unsatisfactory performance and failed to abide by the customer satisfaction standards that

Defendant Silvar and Romano had promised Cablevision Plaintiff Watson would garner were he allowed to return back to work after an altercation with a customer.  56.1 ¶¶ 53–54.  Plaintiff Watson's aggressive comments and behavior during his February 11, 2014 meeting with Defendant Silvar, 56.1 ¶ 55–57, no doubt in light of Plaintiff Watson's issues with that customer in the past that resulted in police involvement, 56.1 ¶ 49, prompted Defendant Silvar to immediately terminate Watson.  56.1 ¶ 58.  Defendant Silvar's essential reason for terminating Plaintiff Watson—his genuine concern over how Plaintiff Watson would continue to comport himself with customers given his poor composure at the February 11th meeting—is a legitimate, non-discriminatory for the termination.

Where an employer demonstrates a legitimate, non-discriminatory reason for an adverse employment action, the burden once again shifts back to the employee to show that the reason is pre-textual.  *Torres*, 628 F.Supp.2d at 472 (citations omitted).  Here, in light of the recent history of a customer altercation, the fact that Cablevision—VisionPro's biggest client—initially did not want Plaintiff Daren Watson to continue to service Cablevision customers, and in the absence of any showing that Defendant Silvar was aware of any purported protected activity engaged in by Plaintiff Watson, Plaintiff cannot credibly state that his termination was pre-textual.

For the foregoing reasons, Plaintiff Daren Watson's claim for retaliation fails and must therefore be dismissed.

**CONCLUSION**

Plaintiffs' claims that Defendants improperly denied them and persons purported similarly-situated to them overtime compensation and unlawfully made deductions from their supposed wages is, for the reasons cited herein, meritless and legally unsupported.  Likewise, Plaintiffs' claims that VisionPo failed to provide them notices pursuant to New York Labor Law § 195, and Plaintiff Watson's claim of retaliation, is refuted by the clear and undisputed facts in the record.  Accordingly, Defendants respectfully request this Honorable Court grant them judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in a dismissal of Plaintiffs' action, dismiss the pending Conditionally Certified Collective Action as moot, and award Defendants such other and further relief as it deems just and proper.

Dated:          Woodbury, New York
                October 22, 2014

**KAUFMAN DOLOWICH & VOLUCK, LLP**

By:_____/s/_____
        Jeffery A. Meyer, Esq. – jmeyer@kdvlaw.com
        Sanjay V, Nair, Esq. –  snair@kdvlaw.com
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Phone: (516) 681-1100
Fax:  (516) 681-1101
*Attorneys for Defendants*

CC:    Peter A. Romero, Esq.
       Frank & Associates, P.C.
       500 Bi-County Blvd, 112N
       Farmingdale, New York 11735
       *Attorneys for Plaintiffs*

4852-8392-1952, v. 1