FRANK & ASSOCIATES, P.C.
Peter A. Romero, Esq.
500 Bi-County Boulevard, 112N
Farmingdale, New York 11735
Tel. (631) 756-0400
Fax (631) 756-0547
promero@laborlaws.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
DAREN WATSON and CYRIL LEWIS,
on behalf of themselves and on
behalf of all other persons similarly situated,

                                  Plaintiffs,

     -against-

VISIONPRO COMMUNICATIONS CORP.,
VISIONPRO CORP., KEVIN SILVAR and
JOSEPH ROMANO,

                                 Defendants.
---------------------------------------------------------------------x

13-CV-00684
(LDW) (GRB)

**PLAINTIFFS' RULE 56.1 COUNTER STATEMENT IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, and the Local Rules of the

United States District Courts for the Southern and Eastern Districts of New York, Plaintiffs

Daren Watson and Cyril Lewis ("Plaintiffs"), by and through their attorneys Frank & Associates,

P.C., respectfully submit Plaintiffs' Counter-Statement of material disputed facts.

1.     Plaintiffs do not dispute the statement of fact set forth in paragraph 1 of

Defendants' Rule 56.1 Statement.

2.     Plaintiffs dispute the statement of fact set forth in paragraph 2 of Defendants'

Rule 56.1 Statement to the extent that it is misleading. Cablevision Systems Corporation is the

only contracted telecommunication provider for whom VisionPro provides services.  VisionPro

Communications Corp. ("VisionPro") performs installation services for residential and

commercial customers of Cablevision Systems Corporation pursuant to a contract.  (Def. Ex. B

at ¶2; Def. Ex. E at 21; 45:23-25)  The contract between VisionPro and Cablevision prohibits

VisionPro from providing services to any of Cablevision's competitors.  (Def. Ex. E 47:9-17)

VisionPro provides a service to Cablevision, which Cablevision, in turn, provides to its own

customers. (Def. Ex. E 48:4-7) VisionPro is paid a stipulated sum by Cablevision for the services

provided by its technicians and is paid directly by Cablevision, not by Cablevision's customers.

(Def. Ex. E 48:21-25)  Cablevision customers do not directly contact VisionPro in connection

with the service and VisionPro does not advertise its services to the general public.  (Def. Ex. E

49:13-21).

     3.     Plaintiffs do not dispute the statement of fact set forth in paragraph 3 Defendants'

Rule 56.1 Statement.

     4.     Plaintiffs dispute the statement of fact set forth in paragraph 4 of Defendants'

Rule 56.1 Statement.  VisionPro sells a service to Cablevision, which Cablevision, in turn, sells

to its own customers. Def. Ex. E 48:4-7

     5.     Plaintiffs do not dispute the statement of fact set forth in paragraph 5 of

Defendants' Rule 56.1 Statement.

     6.     Plaintiffs dispute the statement of fact set forth in paragraph 6 of Defendants'

Rule 56.1 Statement.  Plaintiffs were not paid based on the number of hours they worked each

week.  Def. Ex. C at 40, 57; Def. Ex. D at 70, 75-77 Plaintiffs were paid on a piece-rate basis.

Def. Ex. D at 55 Each task Plaintiffs performed were assigned a dollar value.  Def. Ex. D at 67

Plaintiffs received a fixed amount for each type of service call, regardless of the amount of time

it takes to complete the installation or service appointment.  Def. Ex. D at 55-57  Their weekly compensation was determined by the number of service calls they completed and the rates at which each service call was compensated.  Def. Ex. E at 65-66 [1] While Defendants claim they "changed" the compensation structure after the 2011 wage and hour lawsuit, the compensation VisionPro paid its technician's under the prior scheme was also based on the task performed by the technician.  Def. Ex. E at 19:2-8

      7.     Plaintiffs do not dispute the statement of fact set forth in paragraph 7 of Defendants' Rule 56.1 Statement of Facts.

      8.     Plaintiffs do not dispute the statement of fact set forth in paragraph 8 of Defendants' Rule 56.1 Statement.

      9.     Plaintiffs do not dispute the statement of fact set forth in paragraph 9 of Defendants' Rule 56.1 Statement.

      10.     Plaintiffs do not dispute the statement of fact set forth in paragraph 10 of Defendants' Rule 56.1 Statement.

      11.     Plaintiffs do not dispute the statement of fact set forth in paragraph 11 of Defendants' Rule 56.1 Statement.

      12.     Plaintiffs do not dispute the statement of fact set forth in paragraph 12 of Defendants' Rule 56.1 Statement of Fact.

      13.     Plaintiffs do not dispute the statement of fact set forth in paragraph 13 of Defendants' Rule 56.1 Statement.

      14.     Plaintiffs do not dispute the statement set forth in paragraph 14 of Defendants' Rule 56.1 Statement.

15.     Plaintiffs do not dispute the statement set forth in paragraph 15 of Defendants' Rule 56.1 Statement.

16.     Plaintiffs dispute the statement set forth in paragraph 16 of Defendants' Rule 56.1 Statement.  Plaintiffs used vehicles owned by Visionpro to complete their service calls and were required to fuel the vehicles at their own expense.  Def. Ex. E at 24; 30; 36:25; 37:2-5; 40:18-20 It cost Plaintiff approximately $40 to $50 per day to fuel VisionPro's vehicle and he worked six days per week. Def. Ex. C at 94-95 ; Def. Ex. E at 37:6-8; 39 Thus, on average, Watson spent $250 for gas each week.  Def. Ex. C at 95 Although Watson's paycheck indicated an amount designated as "Gas Reimbursement," he was not reimbursed for gas expenditures and he complained to Defendant Silvar about that. Def. Ex. C at 103 Instead of reimbursing Plaintiffs for the expense they incurred in fueling VisionPro's vehicle, VisionPro designated 25% of Plaintiffs' wages as pre-tax.  Def. Ex. E at 67-68 The tax benefit did not change the total compensation VisionPro paid Plaintiffs.  Def. Ex. E at 68 Moreover, there was no relationship between the amount of money Plaintiffs saved in taxes and the amount they expended fueling VisionPro's vehicle. Def. Ex. E at 69:19-23; 70:17-22

17.     Plaintiffs do not dispute the statement of fact set forth in paragraph 17 of Defendants' Rule 56.1 Statement.

18.     Plaintiffs do not dispute the statement of fact set forth in paragraph 18 of Defendants' Rule 56.1 Statement.

19.     Plaintiffs dispute the statements of fact set forth in paragraph 19 of Defendants' Rule 56.1 Statement.  VisionPro did not accurately track the work hours worked by Plaintiffs. VisionPro did not use a punch-card time clock or digital scan system to verify the time Plaintiffs began and ended work each day.   Def. Ex. E 25:7-20; 28:14-16   Only Cablevision, not

4

VisionPro, makes and maintains records which show the time that each service call is completed by VisionPro employees. Id. at 34:8-14 VisionPro did not review Cablevision's records to ascertain the actual number of hours worked by the technician each week in calculating Plaintiffs' pay. Id. at 34:15-17

Plaintiffs completed a VisionPro Employee Daily sheet listing each service call they performed. Def. Ex. C at 73; Def. Ex. D at 39, 47  The Employee Daily sheet included a space to indicate the time Plaintiffs started work, took lunch, and ended work. Def. Ex. D at 47, 51 However, the Employee Daily Sheets do not accurately reflect the actual time Plaintiffs worked each day. (Watson Decl. ¶12) Watson indicated on the Employee Daily Sheet the time he arrived at the service call, but not the time spent driving to the service call because he was instructed by his supervisors to record the time he arrived at his first service call of the day as the "start time," rather than the time he arrived at VisionPro's shop in the morning. Def. Ex. C at 97-98; Watson Decl. ¶15) Watson spent an hour at the shop at the end of each day, not including time spent driving from his last service call to the shop, but he was instructed to record the time he finished his last service call of the day as the "stop time," rather than the time he left VisionPro's shop at the end of the day. (Watson Dep. 97:19-23; Watson Decl. ¶15)

Plaintiffs were also instructed by their supervisors to record a lunch break, regardless of whether or not they took a lunch break. Def. Ex. D at 52-53. Plaintiff Lewis testified: "We don't get a lunch break…[because of the nature of our work] we don't have the time to sit and take a break, but management said if we do not fill out the lunch, that we're not going to get our check, so we just have to fill in a time there." Id.

20.     Plaintiffs do not dispute the statement of fact set forth in paragraph 20 of Defendants' Rule 56.1 Statement.

21.     Plaintiffs do not dispute that the statement set forth in paragraph 21 of Defendants' Rule 56.1 Statement accurately quotes VisionPro's Employee Handbook.

22.     Plaintiffs do not dispute the statement of fact set forth in paragraph 22 of Defendants' Rule 56.1 Statement.

23.     Plaintiffs do not dispute the statements of fact set forth in paragraph 23 of Defendants' Rule 56.1 Statement.

24.     Plaintiffs do not dispute the statement of fact set forth in paragraph 24 of Defendants' Rule 56.1 Statement.

25.     Plaintiffs do not dispute the statement of fact set forth in paragraph 25 of Defendants' Rule 56.1 Statement.

26.     Plaintiffs dispute the statement of fact set forth in paragraph 26 of Defendants' Rule 56.1 Statement. Plaintiffs' Employee Daily Sheets do not accurately reflect the actual time Plaintiffs worked each day. (Watson Decl. ¶12) Watson indicated on the Employee Daily Sheet the time he arrived at the service call, but not the time spent driving to the service call because he was instructed by his supervisors to record the time he arrived at his first service call of the day as the "start time," rather than the time he arrived at VisionPro's shop in the morning.  Def. Ex. C at 97-98; Watson Decl. ¶15) Watson spent an hour at the shop at the end of each day, not including time spent driving from his last service call to the shop, but he was instructed to record the time he finished his last service call of the day as the "stop time," rather than the time he left VisionPro's shop at the end of the day. (Watson Dep. 97:19-23; Watson Decl. ¶15)

Plaintiffs were also instructed by their supervisors to record a lunch break, regardless of whether or not they took a lunch break.  Def. Ex. D at 52-53. Plaintiff Lewis testified: "We don't get a lunch break…[because of the nature of our work] we don't have the time to sit and take a

break, but management said if we do not fill out the lunch, that we're not going to get our check, so we just have to fill in a time there." Id.

27.     Plaintiffs dispute the statement of fact set forth in paragraph 27 of Defendants' Rule 56.1 Statement.  Watson was instructed by his supervisors to record the time he arrived at his first service call of the day as the "start time," rather than the time he arrived at VisionPro's shop in the morning.  Def. Ex. C at 97-98; Watson Decl. ¶15) Watson was instructed by supervisors to record the time he finished his last service call of the day as the "stop time," rather than the time he left VisionPro's shop at the end of the day. Def. Ex. C at 97:19-23; Watson Decl. ¶15)  Plaintiffs were also instructed by their supervisors to record a lunch break, regardless of whether or not they took a lunch break.  Def. Ex. D at 52-53.

28.     Plaintiffs do not dispute the statement of facts set forth in paragraph 28 of Defendants' Rule 56.1 Statement.

29.     Plaintiffs do not dispute the statement of facts set forth in paragraph 29 of Defendants' Rule 56.1 Statement.

30.     Plaintiff does not dispute the statement of facts set forth in paragraph 30 of Defendants' Rule 56.1 Statement.

31.     Plaintiffs do not dispute the statement set forth in paragraph 31 of Defendants' Rule 56.1 Statement.

32.     Plaintiffs do not dispute the statement of fact set forth in paragraph 32 of Defendants' Rule 56.1 Statement.

33.     Plaintiffs dispute the statements of fact set forth in paragraph 33 of Defendants' Rule 56.1 Statement. Plaintiffs were instructed by their supervisors to record a lunch break, regardless of whether or not they took a lunch break.  Def. Ex. D at 52-53; Watson Decl. ¶16.

34.      Plaintiffs dispute the statement of facts set forth in paragraph 34 of Defendants' Rule 56.1 Statement.   Plaintiffs were instructed by their supervisors to record a lunch break, regardless of whether or not they took a lunch break.   Def. Ex. D at 52-53

35.      Plaintiffs dispute the statement of fact set forth in paragraph 35 of Defendants' Rule 56.1 Statement.   Watson was instructed by his supervisors to record the time he arrived at his first service call of the day as the "start time," rather than the time he arrived at VisionPro's shop in the morning.   Def. Ex. C at 97-98; Watson Decl. ¶15)  Watson was instructed by supervisors to record the time he finished his last service call of the day as the "stop time," rather than the time he left VisionPro's shop at the end of the day. Def. Ex. C at 97:19-23; Watson Decl. ¶15)  Plaintiffs were also instructed by their supervisors to record a lunch break, regardless of whether or not they took a lunch break.   Def. Ex. D at 52-53.

36.      Plaintiffs  do  not  dispute  the  statement  of  fact  set  forth  in  paragraph  36  of Defendants' Rule 56.1 Statement.

37.      Plaintiffs  do  not  dispute  the  statement  of  fact  set  forth  in  paragraph  37  of Defendants' Rule 56.1 Statement.

38.      Plaintiffs  do  not  dispute  the  statement  of  fact  set  forth  in  paragraph  38  of Defendants' Rule 56.1 Statement.

39.      Plaintiffs  do  not  dispute  the  statement  of  fact  set  forth  in  paragraph  39  of Defendants' Rule 56.1 Statement.

40.      Plaintiffs  do  not  dispute  the  statement  of  fact  set  forth  in  paragraph  40  of Defendants' Rule 56.1 Statement.

41.      Plaintiffs  do  not  dispute  the  statement  of  fact  set  forth  in  paragraph  41  of Defendants' Rule 56.1 Statement.

42.    Plaintiffs dispute the statements of fact set forth in paragraph 42 of Defendants' Rule 56.1 Statement. Plaintiffs were paid on a piece-rate basis.  Def. Ex. D at 55 Each task Plaintiffs performed were assigned a dollar value.  Def. Ex. D at 67 Plaintiffs received a fixed amount for each type of service call, regardless of the amount of time it takes to complete the installation or service appointment.  Def. Ex. D at 55-57  Their weekly compensation was determined by the number of service calls they completed and the rates at which each service call was compensated.  Def. Ex. E at 65-66 Plaintiffs were paid by the job, and not based on the number of hours they worked each week.  Def. Ex. C at 40, 57; Def. Ex. D at 70, 75-77

43.    Plaintiffs do not dispute the statement of fact set forth in paragraph 43 of Defendants' Rule 56.1 Statement.

44.    Plaintiffs do not dispute the statement of fact set forth in paragraph 44 of Defendants' Rule 56.1 Statement.

45.    Plaintiffs do not dispute the statement of fact set forth in paragraph 45 of Defendants' Rule 56.1 Statement.

46.    Plaintiffs do not dispute the statement of fact set forth in paragraph 46 of Defendants' Rule 56.1 Statement.

47.    Plaintiffs do not dispute the statement of fact set forth in paragraph 47 of Defendants' Rule 56.1 Statement.

48.    Plaintiffs dispute the statement of fact set forth in paragraph 48 of Defendants' Rule 56.1 Statement to the extent that it is misleading and/or incomplete.  Plaintiffs were paid on a piece-rate basis.  Def. Ex. D at 55 Each task Plaintiffs performed were assigned a dollar value. Def. Ex. D at 67 Plaintiffs received a fixed amount for each type of service call, regardless of the amount of time it takes to complete the installation or service appointment.  Def. Ex. D at 55-57

Their weekly compensation was determined by the number of service calls they completed and the rates at which each service call was compensated.  Def. Ex. E at 65-66 Plaintiffs were paid by the job, and not based on the number of hours they worked each week.  Def. Ex. C at 40, 57; Def. Ex. D at 70, 75-77

49.     Plaintiffs do not dispute the statement of fact set forth in paragraph 49 of Defendants' Rule 56.1 Statement.   Specifically, Watson called the police when a Cablevision customer became upset and called him "the N word."  Def. Ex. C at 85

50.     Plaintiffs do not dispute the statement of fact set forth in paragraph 50 of Defendants' Rule 56.1 Statement.  Watson was initially suspended during an investigation of the incident, but was ultimately brought back to work because it was determined he was not at fault. Def. Ex. C at 89:5-11; 92.

51.     Plaintiffs dispute the statement of fact set forth in paragraph 51 of Defendants' Rule 56.1 Statement. There is documentary evidence to support Defendants' claim that Cablevision asked VisionPro to remove Plaintiff Watson from the roster of technicians.  (Silvar Dep. 13:19-23).

52.     Plaintiffs dispute the statement of fact set forth in paragraph 52 of Defendants' Rule 56.1 Statement.  It was determined Plaintiff was not at fault for the incident.  See, Romero Decl. Ex. E; Def. Ex. C at 89:5-11; 92.

53.     Plaintiffs dispute the statement of fact set forth in paragraph 53 of Defendants' Rule 56.1 Statement.   Watson specifically denies anyone at VisionPro discussed his survey numbers with him.  Def. Ex. C  at 88:21-25

54.     Plaintiffs dispute the statement of fact set forth in paragraph 54 of Defendants' Rule 56.1 Statement.  Watson denies Silvar met with him regarding his work performance on

10

February 11.   Def. Ex. C at 83; 87:20-24; 91:17-23 Watson specifically denies anyone at VisionPro discussed his survey numbers with him.  Id. at 88:21-25

Watson commenced this action on February 6, 2013 [DE 1]. On February 11, Defendant Silvar summoned Plaintiff to his office and asked him why he was "trying to bring down his company."  Def. Ex. C at 86:22-25; 98:3-13 Silvar asked Plaintiff for his identification badge and the keys to his truck and terminated Plaintiff's employment.  Id. at 87:8-19 Silvar claims he summoned Plaintiff to review his technician performance.  Romero Decl. Ex. D Specifically, Silvar claims Plaintiff's post-call surveys "were way below" 92 percent," a standard he claims is set by Cablevision.  Def. Ex. F at 14 The survey results are based on customer responses to questions in an automated call following a service appointment.  Silvar claims that he fired Watson because Watson became "aggressive" during the meeting regarding his survey results.  Romero Decl. Ex. D Watson denies Silvar met with him regarding his work performance on February 11.   Def. Ex. C at 83; 87:20-24; 91:17-23 Watson specifically denies anyone at VisionPro discussed his survey numbers with him.  Id. at 88:21-25 Silvar contends that although he personally reviews the surveys weekly and monthly, VisionPro did not retain copies of Plaintiff's surveys because they were "deleted"  Def. Ex. F at 15

55.   Plaintiffs dispute the statement of fact set forth in paragraph 55 of Defendants' Rule 56.1 Statement.   Def. Ex. C at 86:22-25; 98:3-13

56.   Plaintiffs dispute the statement of fact set forth in paragraph 56 of Defendants' Rule 56.1 Statement.   Def. Ex. C at 86:22-25; 98:3-13

57.   Plaintiffs dispute the statement of fact set forth in paragraph 57 of Defendants' Rule 56.1 Statement.   Def. Ex. C at 86:22-25; 98:3-13

11

58.     Plaintiffs do not dispute the statement of fact set forth in paragraph 58 of Defendants' Rule 56.1 Statement.

59.     Plaintiffs dispute the statement of fact set forth in paragraph 59 of Defendants' Rule 56.1 Statement.   Watson commenced this action on February 6, 2013 [DE 1]. On February 11, Defendant Silvar summoned Plaintiff to his office and asked him why he was "trying to bring down his company." Def. Ex. C at 86:22-25; 98:3-13 Silvar asked Plaintiff for his identification badge and the keys to his truck and terminated Plaintiff's employment.  Id. at 87:8-19  Silvar claims he summoned Plaintiff to review his technician performance.   Romero Decl. Ex. D Specifically, Silvar claims Plaintiff's post-call surveys "were way below" 92 percent," a standard he claims is set by Cablevision.  Def. Ex. F at 14  The survey results are based on customer responses to questions in an automated call following a service appointment.  Silvar claims that he fired Watson because Watson became "aggressive" during the meeting regarding his survey results.  Romero Decl. Ex. D Watson denies Silvar met with him regarding his work performance on February 11.  Def. Ex. C at 83; 87:20-24; 91:17-23 Watson specifically denies anyone at VisionPro discussed his survey numbers with him.  Id. at 88:21-25 Silvar contends that although he personally reviews the surveys weekly and monthly, VisionPro did not retain copies of Plaintiff's surveys because they were "deleted" Def. Ex. F at 15

60.     Plaintiffs dispute the statement of fact set forth in paragraph 60 of Defendants' Rule 56.1 Statement.   Watson commenced this action on February 6, 2013 [DE 1]. On February 11, Defendant Silvar summoned Plaintiff to his office and asked him why he was "trying to bring down his company." Def. Ex. C at 86:22-25; 98:3-13 Silvar asked Plaintiff for his identification badge and the keys to his truck and terminated Plaintiff's employment.  Id. at 87:8-19  Silvar claims he summoned Plaintiff to review his technician performance.  (Email Kevin Silvar to

12

Diana Silvar, sent March 4, 2013, Romero Decl. Ex. D) Specifically, Silvar claims Plaintiff's post-call surveys "were way below" 92 percent," a standard he claims is set by Cablevision. Def. Ex. F at 14   The survey results are based on customer responses to questions in an automated call following a service appointment.   Silvar claims that he fired Watson because Watson became "aggressive" during the meeting regarding his survey results.   (Romero Decl. Ex. D)   Watson denies Silvar met with him regarding his work performance on February 11. Def. Ex. C at 83; 87:20-24; 91:17-23 Watson specifically denies anyone at VisionPro discussed his survey numbers with him.   Id. at 88:21-25 Silvar contends that although he personally reviews the surveys weekly and monthly, VisionPro did not retain copies of Plaintiff's surveys because they were "deleted"  Def. Ex. F at 15

61.     Plaintiffs dispute the statement of fact set forth in paragraph 61 of Defendants' Rule 56.1 Statement.   Watson commenced this action on February 6, 2013 [DE 1]. On February 11, Defendant Silvar summoned Plaintiff to his office and asked him why he was "trying to bring down his company."  Def. Ex. C at 86:22-25; 98:3-13 Silvar asked Plaintiff for his identification badge and the keys to his truck and terminated Plaintiff's employment.  Id. at 87:8-19   Silvar claims he summoned Plaintiff to review his technician performance.  (Romero Decl. Ex. D) Specifically, Silvar claims Plaintiff's post-call surveys "were way below" 92 percent," a standard he claims is set by Cablevision.  Def. Ex. F at 14   The survey results are based on customer responses to questions in an automated call following a service appointment.   Silvar claims that he fired Watson because Watson became "aggressive" during the meeting regarding his survey results.   (Romero Decl. Ex. D)   Watson denies Silvar met with him regarding his work performance on February 11.  Def. Ex. C at 83; 87:20-24; 91:17-23 Watson specifically denies anyone at VisionPro discussed his survey numbers with him.  Id. at 88:21-25 Silvar contends that

13

although he personally reviews the surveys weekly and monthly, VisionPro did not retain copies of Plaintiff's surveys because they were "deleted" Def. Ex. F at 15

62.     Plaintiffs dispute the meeting was originally initiated by Silvar on February 11 to discuss with Watson his customer satisfaction ratings. Watson denies Silvar met with him regarding his work performance on February 11.  Def. Ex. C at 83; 87:20-24; 91:17-23 Watson specifically denies anyone at VisionPro discussed his survey numbers with him.  Id. at 88:21-25 Silvar contends that although he personally reviews the surveys weekly and monthly, VisionPro did not retain copies of Plaintiff's surveys because they were "deleted" Def. Ex. F at 15

63.     Plaintiffs do not dispute the statement of fact set forth in paragraph 63 of Defendants' Rule 56.1 Statement.

64.     Plaintiffs do not dispute the statement of fact set forth in paragraph 64 of Defendants' Rule 56.1 Statement.

65.     Plaintiffs do not dispute the statement of fact set forth in paragraph 65 of Defendants' Rule 56.1 Statement.

66.     Plaintiffs do not dispute the statement of fact set forth in paragraph 66 of Defendants' Rule 56.1 Statement.

67.     Plaintiffs dispute the statement of fact set forth in paragraph 67 of Defendants' Rule 56.1 Statement.   Def. Ex. D at 55-57; Def. Ex. D at 67; Def. Ex. D at 70, 75-77

68.     Plaintiffs dispute the statement of fact set forth in paragraph 67 of Defendants' Rule 56.1 Statement.   Def. Ex. D at 55-57; Def. Ex. D at 67; Def. Ex. D at 70, 75-77

69.     Plaintiffs do not dispute the statement of fact set forth in paragraph 69 of Defendants' Rule 56.1 Statement.

14

70.     Plaintiffs do not dispute the statement of fact set forth in paragraph 70 of Defendants' Rule 56.1 Statement.

71.     Plaintiffs do not dispute the statement of fact set forth in paragraph 71 of Defendants' Rule 56.1 Statement.

72.     Plaintiffs do not dispute the statement of fact set forth in paragraph 72 of Defendants' Rule 56.1 Statement.

73.     Plaintiffs do not dispute the statement of fact set forth in paragraph 73 of Defendants' Rule 56.1 Statement.

74.     Plaintiffs do not dispute the statement of fact set forth in paragraph 74 of Defendants' Rule 56.1 Statement.

75.     Plaintiffs do not dispute the statement of fact set forth in paragraph 75 of Defendants' Rule 56.1 Statement.

76.     Plaintiffs do not dispute the statement of fact set forth in paragraph 76 of Defendants' Rule 56.1 Statement.

Dated: Farmingdale, New York
        January 19, 2015

                                        *Respectfully submitted,*

                                        FRANK & ASSOCIATES, P.C.

                        By:             _____
                                        Peter A. Romero, Esq.
                                        500 Bi-County Boulevard, 112N
                                        Farmingdale, New York 11735
                                        Tel. (631) 756-0400
                                        Fax (631) 756-0547
                                        promero@laborlaws.com

                                        *Attorneys for Plaintiff*

15