UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DAREN WATSON and CYRIL LEWIS,
on behalf of themselves and on                          Case No. 13-CV-0684 (LDW)(GRB)
behalf of all other persons similarly situated,

                              Plaintiffs,

                  -against-

VISIONPRO COMMUNICATIONS CORP.,
VISIONPRO CORP., KEVIN SILVAR and
JOSEPH ROMANO,

                              Defendants.
------------------------------------------------------------X

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR MOTION FOR SUMMARY JUDGMENT PURSUANT TO FED. R. CIV. P. 56**

KAUFMAN DOLOWICH & VOLUCK, LLP
*Attorneys for Defendants*
By: Jeffery A. Meyer, Esq.
Sanjay V. Nair, Esq.
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Phone: (516) 681-1100

## I.   **TABLE OF CONTENTS**

II.  TABLE OF AUTHORITIES………………………………………………………..iii

III. PRELIMINARY STATEMENT………………………………………………………1

IV. ARGUMENT……………………………………………………………………...1

    A.  Defendant VisionPro is a Retail or Service Establishment………………………..1

    B.  Defendants are Entitled to Rely on Plaintiffs' Timesheets to Establish
        Their Hours Worked and Plaintiffs Cannot Demonstrate That Defendants Had
        Constructive Knowledge About Any Non-Reported Hours………………………4

    C.  Plaintiffs' Fuel Expenditures Do Not Summarily Bring Their Regular Rate
        of Pay Below One and One-Half Times The Minimum Hourly Rate…………......6

    D.  There Is No Basis For Plaintiff Watson to Argue That Defendant VisionPro
        Possessed General Corporate Knowledge of Plaintiff Watson's Lawsuit………...8

    E.  There Is No Basis for Plaintiff Watson to Suggest That The Underlying
        Reason For His Termination Was Pretextual…………………………………...9

V.  CONCLUSION..............................................................................................10

## II.    <u>TABLE OF AUTHORITIES</u>

*Cases*

*Alston v. New York City Transit Auth.*, 14 F. Supp. 2d 308 (S.D.N.Y. 1998)…………………..…9

*El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931 (2d Cir. 2010)…………………………………..10

*Heba v. New York State Div. of Parole*, 5

   37 F. Supp. 2d 457 (E.D.N.Y. 2007)………………………………………………………..9

*Johnson v. Wave Comm GR LLC*, 4 F.Supp.3d 423 (N.D.N.Y. 2014)………………………..1-3,8

*Jones v. Tucker Commc'ns, Inc.*, 11-CV-398 (MTT),

   2013 WL 6072966 (M.D. Ga. Nov. 18, 2013)……………………………………………..4

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352 (2d Cir. 2011)………………………………….4, 6

*Lamberson v. Six W. Retail Acquisition, Inc.*,

   122 F. Supp. 2d 502 (S.D.N.Y. 2000)………………………………………………………9

*Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*,

   842 F.2d 590 (2d Cir. 1988)…………………………………………………………………9

*Mullins v. City of N.Y.*, 554 F.Supp.2d 483 (S.D.N.Y. 2008)……………………………………8

*Owopetu v. Nationwide CATV Auditing Servs., Inc.*, 10-CV-18,

   2011 WL 4433159 (D. Vt. Sept. 21, 2011)…………………………………………………4

*Perkins v. Mem'l Sloane-Kettering Cancer Ctr.*, 02-CV-6493 (RJH),

   2005 WL 2453078 (S.D.N.Y. Sept. 30, 2005)……………………………………………..8

*Shabat v. Billotti,* No. 96-7638, 1997 WL 138836 (2d Cir. Mar. 18, 1997)……………………10

*Treglia v. Town of Manlius*, 313 F.3d 713 (2d Cir. 2002)………………………………………..9


*Regulations*

29 C.F.R. § 779.331……………………………………………………………………………………3

### III.  PRELIMINARY STATEMENT

Defendants VisionPro Communications Corp., VisionPro Corp. ("VisionPro"), Kevin Silvar, and Joseph Romano (collectively, "Defendants") respectfully submit this Reply Memorandum of Law in Further Support of Their Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Defendants submit they are further entitled to summary judgment because: (a) Defendant VisionPro is a retail or service establishment, and this Honorable Court should not depart from previous relevant decisions on the issue; (b) Defendant VisionPro is entitled to rely on Plaintiffs' timesheets because Plaintiffs contravened company policy in engaging in unreported hours that Defendants had no notice of; (c) Plaintiffs' alleged fuel expenditures do not summarily bring their regular rate of pay below one and one-half times the minimum applicable rate; (d) Defendants did not have notice or "general corporate knowledge" of Defendant Watson's protected activity; and (e) Defendant Watson has not adduced any evidence supporting his argument that Defendant VisionPro's termination of him was pretext.

### IV. ARGUMENT

#### A.  Defendant VisionPro is a Retail or Service Establishment

Plaintiffs contend that Defendant VisionPro lacks a "retail concept," and therefore the 7(i) commissioned salesperson exemption at issue cannot apply to it.  In doing so, Plaintiffs urge the Court to not only ignore the conclusions of Defendants' expert witness, Joshua N. Koenig [*See* Meyer Decl., Ex. T., Affidavit of Joshua N. Koenig ¶ 9], but Plaintiff desire the Court to depart from other recent precedent in the Second Circuit, *Johnson v. Wave Comm GR LLC*, 4 F.Supp.3d 423 (N.D.N.Y. 2014), and parrots many of the same failed arguments set forth by the plaintiffs in that proceeding.

1

For instance, Plaintiffs contend that Defendant VisionPro's technicians worked in the "construction" industry.  However, much like the cable installers in *Johnson*, who were found to engage in more than construction based work since "they did more than hookup wiring for cable television" and "engaged with end users in their homes or businesses," Defendant VisionPro's technicians undertook activities far beyond mere cable wiring. *Johnson*, 4 Supp.3d at 423.  It is undisputed that technicians visited actual homes and business to install and troubleshoot equipment.[1]  Moreover, notwithstanding Plaintiffs' conclusory arguments to the contrary that lack any citation in the record[2], VisionPro technicians <u>also sold services directly to end users</u> via on-site customer requests for additional or side work to be performed by technicians, above and beyond work that the customer contacted Cablevision for. [Declaration of Jeffery A. In Support of Defendants' Motion for Summary Judgment ("Meyer Decl."), Ex. E, Romano Tr., 48: 21-25; 49: 2-12].

Additionally, Plaintiffs' reliance on the U.S. Census Bureau's North American Industry Classification System ("NAICS") in furtherance of their contention that Defendant VisionPro is an employer in the construction industry is misplaced.  The *Johnson* Court duly noted that the 2012 NAICS, which Plaintiffs also draw upon for their arguments, supports a finding that the installers at the heart of the *Johnson* case were more appropriately designated as telecommunications workers in the information sector, not the construction sector.  *Johnson*, 4 F.Supp.3d at 439.  The *Johnson* Court likewise noted that the Department of Labor's other

---

[1] [Defendants' Local Rule 56.1 Statement of Material Facts ¶ 38; Plaintiffs' Rule 56.1 Counter Statement in Opposition to Defendants' Motion for Summary Judgment ¶ 38].

[2] In Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, Plaintiffs incorrectly stated that "Visionpro [*sic*] does not sell goods or services to the general public.  Rather, its services are sold to Cablevision." (pp. 16).

guidance on the subject of classification supported a finding that the installers were appropriately

not classified in the construction industry:

> Defendants cite the DOL Bureau of Labor Statistics' Standard Occupational
> Classification ("SOC") which characterizes the position of "Telecommunications
> Equipment Installers and Repairers, Except Line Installers" as an "Installation,
> Maintenance and Repair Occupation." Telecommunications equipment installers
> and repairers "[i]nstall, set-up, rearrange, or remove switching, distribution,
> routing, and dialing equipment used in central offices or headends. Service or
> repair telephone, cable television, Internet, and other communications equipment
> on customers' property." *Id.* Again, this position is classified within the SOC
> Major Group of "Installation, Maintenance and Repair Occupation" and not
> "Construction and Extraction Occupations." Defendants also point out that the
> position of cable television hookup contractor does not appear anywhere in the
> SOC. Defs.' Mem. Opp. Mot. Summ. J. 14–15. […] The DOL Bureau of Labor
> Statistics' Occupational Outlook Handbook also lists "Telecommunications
> Equipment Installers and Repairers, Except Line Installers," within the
> telecommunications industry.

> *Id.* at 438-39 (footnotes omitted).

Furthermore, Plaintiffs' assertion that VisionPro's sales of services entirely constitute

"sales for resale" is remarkably similar to the unavailing argument made by the plaintiff in

*Johnson*.  There, the court found that:

> Wave Comm [the employer of the cable installers] provides services to the end
> customer, even if that customer is Time Warner's customer. *See Schwind,* 371
> F.Supp.2d at 566. It is inconsequential that Wave Comm is compensated by Time
> Warner for its services rather than by the end customer. The cost for Wave
> Comm's services is paid by the end consumer and it is merely a matter of
> convenience that payment passes through Time Warner as charges for installation
> services included in the customers' monthly cable bills.

> *Id.* at 436.  VisionPro comparably provides services to end customers of Cablevision, and

Cablevision pays for those services provided by VisionPro through the billing of its customers.

There is no expectation, or proof offered by Plaintiffs, that the installation and troubleshooting

services provided by VisionPro are somehow sold again by Cablevision customers.  *See* 29

C.F.R. § 779.331 ("The common meaning of 'resale' is the act of 'selling again.' A sale is made

for resale where the seller knows or has reasonable cause to believe that the goods or services will be resold, whether in their original form, or in an altered form, or as a part, component or ingredient of another article.").   Accordingly, there is no practical difference between the arrangement found permissible in this present case or *Johnson*, or, for that matter, other cases that have ruled upon this issue.  *See, e.g*, *Jones v. Tucker Commc'ns, Inc.*, 11-CV-398 (MTT), 2013 WL 6072966, at *6 (M.D. Ga. Nov. 18, 2013) (finding no resale by employer of cable installation technicians and essentially rejecting the retailer jeweler argument that Plaintiffs here employ in their opposition papers, stating that "[t]he installation does not become part of the product sold by [cable television operator] as a repaired watch for a jeweler or a repaired automobile for a secondhand car dealer does but remains a discrete part of the transaction which [defendant] provides directly to the end user."); *Owopetu v. Nationwide CATV Auditing Servs., Inc.*, 10-CV-18, 2011 WL 4433159, at *6 (D. Vt. Sept. 21, 2011) (noting that customers to whom defendant directly provides its cable television and broadband internet installation and service work are at the very end of the stream of distribution, and that there are no sales for resale).

**B. Defendants are Entitled to Rely on Plaintiffs' Timesheets to Establish Their Hours Worked and Plaintiffs Cannot Demonstrate That Defendants Had Constructive <u>Knowledge About Any Non-Reported Hours</u>**

It is well established that once an employer knows or has reason to know that an employee is working overtime, it cannot deny compensation simply because the employee failed to properly record or claim his overtime hours. *Kuebel v. Black & Decker Inc.,* 643 F.3d 352, 363 (2d Cir. 2011).  In the instant proceeding, however, Plaintiffs have not demonstrated that Defendant VisionPro knew or had reason to know that Plaintiffs were purportedly working hours that they were not recorded by the Plaintiffs on their respective timesheets.

4

Plaintiffs repeatedly state that they began work at 6:30 AM; however, as testified by Defendant Joseph Romano, technicians were permitted to arrive at Defendant VisionPro's shop anywhere up to 8:30 AM. [Meyer Decl., Ex. E, Romano Tr., 25: 2-6]. Plaintiffs further state that they were compelled to return to the shop after they completed their last service appointment; however, as noted by Defendant Joseph Romano, technicians often took their vehicles home, and would not return to the shop after their last assignment. [Meyer Decl., Ex. E, Romano Tr., 29: 7-22]. Accordingly, given the differing schedules amongst all employees, Defendants permitted Plaintiffs to record their own hours to track their comings and goings. It is undisputed that under policies set forth in the VisionPro handbook, which each Plaintiff acknowledged receipt and understanding of, technicians are responsible for accurately reporting all hours worked and are prohibited from working unreported hours.[3] It is also undisputed under the written and signed "Policy on Recording Hours Worked," each of the Plaintiffs were required to take a one-half hour lunch break each day or otherwise to immediately notify Defendant VisionPro that no such uninterrupted lunch break was taken.[4] It is further undisputed that under the written and signed Commission Agreements, technicians were "prohibited from working unreported hours 'off-the-clock,'" were prohibited from "failing to correct any inaccurate information in the weekly commission statement," and "should report as hours worked all lunch periods during which they were not completely relieved of duty for 30 minutes."[5]

However, Plaintiff Watson now has stated for the first time that he was affirmatively

---

[3] [Defendants' Local Rule 56.1 Statement of Material Facts ("56.1") ¶¶ 28, 46, 73; Plaintiffs' Rule 56.1 Counter Statement in Opposition to Defendants' Motion for Summary Judgment ("Counter 56.1") ¶¶ 28, 46, 73].

[4] [56.1 ¶¶ 31 47, 74; Counter 56.1 ¶¶ 31 47, 74].

[5] [56.1 ¶¶ 30, 43, 70; Counter 56.1 ¶¶ 30, 43, 70].

instructed by an "office employee" of Defendant VisionPro ("Laura," whom Plaintiff had not previously identified or disclosed any earlier) to state on his timesheets that he took a lunch break regardless of whether he took one or not.  Plaintiff Watson's revelation is a transparent and clumsy attempt on precipice of summary judgment to create an issue of fact and gain the benefit that the plaintiff in *Kuebel* garnered, who was able to establish an issue of fact precluding summary judgment on the basis of the purported fact that his <u>managers</u> (not an "office employee") informed him to falsify his time records.  *Kuebel*, 643 F.3d at 363.

Ultimately, as Plaintiffs implicitly concede they each deliberately falsified their time records and allegedly underreported their hours and expressly violated multiple company policies, Plaintiffs also falsified time records in complete disregard of the requirement on their timesheets that their signature and submission of the timesheet indisputably certified "that this daily work sheet reflects a true actual representation of all jobs and hours worked by me on the work date specified."[6]  Accordingly, Plaintiffs have not established that Defendant VisionPro's records should not be deemed accurate for the purposes of assessing the number of hours worked by Plaintiffs.

### C. Plaintiffs' Fuel Expenditures Do Not Summarily Bring Their Regular Rate of Pay Below One and One-Half Times The Minimum Hourly Rate

<u>Plaintiffs</u> states that their expenditures on gasoline amounted to two hundred and fifty dollars ($250.00) each week, but *only Plaintiff Watson has stated that his expenditures were in this amount*.  [Meyer Decl., Ex. C, Watson Tr., 95: 7-12].  There is no testimony or citation to the record by Plaintiff Lewis that his fuel expenditures were also allegedly $250.00 per week.

---

[6] [56.1 ¶ 29; Counter 56.1 ¶ 29].

Notably, Plaintiff Watson stated under oath at his deposition that he had receipts detailing these fuel expenditures, [Meyer Decl., Ex. C, Watson Tr., 98: 18-25; 99: 2-18], but Plaintiff Watson tellingly *did not produce the same in discovery nor have annexed the same in support of their opposition to summary judgment*. Instead, he has relied on his bald, unsupported estimations in support of his argument.

Regardless, for the purposes of summary judgment, were Plaintiff Watson's alleged fuel expenditures given credence, Plaintiff Watson's regular rate of pay largely remains above one and one-half times the minimum applicable, ten dollars and eighty-eight cents ($10.88).   There only exists ten (10) pay periods where Plaintiff Watson's regular rate of pay falls below $10.88 were Plaintiff Watson's alleged amount of fuel expenditures to be deducted from his weekly earnings and divided by the number of hours worked:

| Pay Period | Hours Worked Reported on Timesheets | Weekly Earnings | Fuel Expenditure | Rate of Pay |
|---|---|---|---|---|
| 6/25/12 – 7/1/12 | 46.53 | $664.67 | ($250.00) | **$8.91** |
| 7/23/12 – 7/29/12 | 63.43 | $842.55 | ($250.00) | **$9.34** |
| 8/6/12 – 8/12/12 | 71.83 | $812.39 | ($250.00) | **$7.83** |
| 8/13/12 – 8/19/12 | 67.25 | $819.03 | ($250.00) | **$8.46** |
| 8/20/12 – 8/26/12 | 57.5 | $761.81 | ($250.00) | **$8.90** |
| 7/2/12 – 7/8/12 | 40.75 | $670.66 | ($250.00) | **$10.32** |
| 7/9/12 – 7/15/12 | 60.98 | $909.56 | ($250.00) | **$10.82** |
| 7/16/12 – 7/22/12 | 67.48 | $931.38 | ($250.00) | **$10.10** |
| 12/10/12 – 12/16/12 | 72.8 | $824.50 | ($250.00) | **$7.89** |
| 12/17/12 – 12/23/12 | 55 | $722.91 | ($250.00) | **$8.60** |

Accordingly, Defendants would still nonetheless be entitled to the exemption for all payroll periods *except for the above-listed periods*[7] since Defendant VisionPro maintained

---

[7] Plaintiff Watson states he received a gas card during his final month with the company by which the company paid for his fuel expenditures. [Meyer Decl., Ex. C, Watson Tr., 95: 95: 7-12].  Accordingly, his last four weekly pay periods cannot have the purported $250.00 in fuel expenditures deducted from his weekly earnings.

Plaintiff Watson's regular rate of pay above one and one-half times the minimum applicable rate. *See Johnson v. Wave Comm GR LLC*, 4 F.Supp.3d at 445-46 (granting summary judgment on those pay periods where defendants could demonstrate they paid one and one-half times the minimum wage for any week during those periods).

### D. There Is No Basis For Plaintiff Watson To Argue That Defendant VisionPro Possessed General Corporate Knowledge of His Lawsuit

As set forth in Defendants moving papers, to establish a *prima facie* claim for retaliation, Plaintiff Darrel Watson must prove, *inter alia*, that he participated in a protected activity known to Defendants. *See, e.g., Mullins v. City of N.Y.,* 554 F.Supp.2d 483, 488 (S.D.N.Y. 2008). In support of his contention that all the elements of his *prima facie* claim have been met, Plaintiff Watson suggests that Defendant VisionPro possessed "general corporate knowledge" that Plaintiff Watson engaged the Defendants in a lawsuit prior to his termination. However, Plaintiff has not adduced any evidence to support his theory that Defendant VisionPro possessed such "general corporate knowledge." That is to say, Plaintiff has not and cannot cite any complaint made to any employee or management of Defendant VisionPro or actual service of his Complaint which would have given Defendant VisionPro notice of the lawsuit prior to the Plaintiff's termination. Accordingly, Plaintiff Watson cannot genuinely argue of the existence of "general corporate knowledge" which would support his contention of knowledge of his protected activity by Defendants.

Furthermore, cases which Plaintiff cites favorably in an attempt to analogize his case with differ significantly from the facts in the instant proceeding since Plaintiff Watson made no communication or otherwise took any action to put Defendant VisionPro on notice of his claims or lawsuit prior to his termination. *Cf. Perkins v. Mem'l Sloane-Kettering Cancer Ctr.*, 02-CV-6493 (RJH), 2005 WL 2453078 (S.D.N.Y. Sept. 30, 2005) (protected activity known to

8

defendant before because plaintiff met and discussed her sense of being treated differently than men); *Treglia v. Town of Manlius*, 313 F.3d 713 (2d Cir. 2002) (protected activity known to defendant because New York State Division of Human Rights contacted defendant in connection with a complaint filed by Plaintiff, and defendant did not contest that the protected activity was known to it at the time of termination); *Heba v. New York State Div. of Parole*, 537 F. Supp. 2d 457 (E.D.N.Y. 2007) (protected activity known to defendant because plaintiff called to complain about race, religion, and national origin discrimination to internal Office of Equal Employment Opportunity/Diversity Management prior to being re-assigned); *Alston v. New York City Transit Auth.*, 14 F. Supp. 2d 308 (S.D.N.Y. 1998) (protected activity known to defendant because plaintiff filed an internal Equal Employment Opportunity complaint prior to her being retaliated against); *Lamberson v. Six W. Retail Acquisition, Inc.,* 122 F. Supp. 2d 502 (S.D.N.Y. 2000) (protected activity known to defendant because plaintiff directly complained in writing of unlawful discrimination against another employee to principal of defendant's business); *Manoharan v. Columbia Univ. Coll. of Physicians & Surgeons*, 842 F.2d 590 (2d Cir. 1988) (protected activity known to defendant because plaintiff filed an internal Equal Employment Opportunity complaint prior to being terminated).  Here, Plaintiff Watson cannot demonstrate any protected activity that was actually known to any of the Defendants prior to his termination.

Accordingly, Plaintiff Watson has failed to establish a *prima facie* case for retaliation, and his claim must be dismissed.

### E.  There Is No Basis For Plaintiff Watson to Suggest That The Underlying Reason For His Termination Was Pretextual

Plaintiff Watson suggests that he has established a *prima facie* case for discrimination (which he has not), and that Defendants' proffered reasons for his termination are pretextual in nature.  However, assuming *arguendo* that Plaintiff has indeed completely established a *prima*

9

*facie* claim for retaliation, Plaintiff has not come forward with the required evidence regarding the perceived pretext in order to raise a triable issue of fact.  Indeed, to rebut an employer's legitimate business reason for an adverse employment action, a plaintiff must come forward with some evidence of pretext in order to raise a triable issue of fact.  *See El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010).

Here, Plaintiff Watson has not submitted any evidence that his customer satisfaction, particularly after his altercation with a customer, would improve.[8]  Plaintiff Watson has not shown there were grounds to disagree with Defendant VisionPro's assessment of him and his ability to satisfy customers, which became a much more salient issue after the altercation with the customer (and well-before Plaintiff engaged in what he deems his protected activity and well-before he was terminated).  Moreover, even if Plaintiff disagrees with an assessment of his customer satisfaction, a mere disagreement about work performance is not grounds for a finding of pretext.  *See, e.g., Shabat v. Billotti,* No. 96-7638, 1997 WL 138836, at *2 (2d Cir. Mar. 18, 1997) (noting that the fact that an employee's disagreement with an employer's evaluation of him does not prove pretext.)

In light of the foregoing, Plaintiff Watson's claim for retaliation should be dismissed.

## V. <u>CONCLUSION</u>

Defendants respectfully request this Honorable Court grant them judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in a dismissal of Plaintiffs' action, dismissal of

---

[8] Plaintiffs dispute that Defendants Romano and Silvar "fought for" Plaintiff Watson to get his position back by informing Cablevision that Watson's customer satisfaction rating would improve, but Plaintiffs only state that the prior altercation with the customer was not Plaintiff Watson's fault.  Plaintiffs entirely do not address the fact that Defendants effectively promised Cablevision that Plaintiff Watson's performance would improve in response to Cablevision's dissatisfaction with Plaintiff Watson after the altercation, regardless who was at fault during the altercation.  [*See* 56.1 ¶ 52; Counter 56.1 ¶ 52].

the pending Conditionally Certified Collective Action, and an award to Defendants such other

and further relief as he Court deems just and proper.

Dated:        Woodbury, New York
              February 26, 2015

                            **KAUFMAN DOLOWICH & VOLUCK, LLP**

                            By:_____/s/_____
                                   Jeffery A. Meyer, Esq. – jmeyer@kdvlaw.com
                                 Sanjay V, Nair, Esq. –  snair@kdvlaw.com
                            135 Crossways Park Drive, Suite 201
                            Woodbury, New York 11797
                            Phone: (516) 681-1100
                            Fax:  (516) 681-1101
                            *Attorneys for Defendants*

CC:     Peter A. Romero, Esq. (*via ECF*)
          Frank & Associates, P.C.
          500 Bi-County Blvd, 112N
          Farmingdale, New York 11735
          *Attorneys for Plaintiffs*

4842-6334-1346, v. 1

11