UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DAREN WATSON and CYRIL LEWIS,
on behalf of themselves and on                    Case No. 13-CV-0684 (LDW)(GRB)
behalf of all other persons similarly situated,

                              Plaintiffs,

            -against-

VISIONPRO COMMUNICATIONS CORP.,
VISIONPRO CORP., KEVIN SILVAR and
JOSEPH ROMANO,

                              Defendants.
-----------------------------------------------------------X

# MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DECERTIFY FLSA COLLECTIVE ACTION

KAUFMAN DOLOWICH & VOLUCK, LLP
*Attorneys for Defendants*
By: Jeffery A. Meyer, Esq.
Sanjay V. Nair, Esq.
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Phone: (516) 681-1100

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II.  PROCEDURAL HISTORY ................................................................................ 5

III.  FACTUAL BACKGROUND ............................................................................. 5

    A.  VisionPro and Plaintiffs ........................................................................... 5

        1.  VisionPro's Policies Mandate FLSA Compliance, As Technicians Must Accurately Report Time Worked To Ensure Proper Payment. ........ 5

    B.  VisionPro Technicians' Compensation .................................................... 7

    C.  Plaintiffs Had Varying Experiences ......................................................... 9

IV.  ARGUMENT ..................................................................................................... 11

    A.  Plaintiffs Cannot Meet Their Burden To Demonstrate That The Case Should Proceed As A Collective Action. .................................................. 11

    B.  Courts Routinely Decertify Collective Actions That Rely On Claimed Off-The-Clock Work. ...................................................................................... 12

    C.  Plaintiffs' Disparate Factual and Employment Settings Confirm That There Is No Common Basis On Which To Adjudicate Claims. .................. 14

        1.  Plaintiffs Fail To Establish A Common Policy Or Plan Necessary To Sustain A Collective Action. ........................................................... 14

        2.  Whether Technicians Worked Off-The-Clock And Are Entitled to Overtime Beyond What Was Paid Requires Individualized Inquiries. ................................................................................................ 17

            a.  Whether Technicians Qualified for the Section 7(i) Exemption Is An Individual Inquiry. .......................................... 17

            b.  Whether Plaintiffs and Each Opt-In Worked Overtime, And How Much, Also Requires Individualized Inquiry. .................... 18

            c.  Whether And Why Named and Opt-In Plaintiffs Ignored Policies Requires An Individualized Inquiry. ........................... 19

        3.  Whether Defendants Had Actual or Constructive Knowledge of Alleged Overtime Work Will Require Individualized Inquiries. ............. 21

        4.  Determining Damages Requires An Individualized Inquiry. ................ 23

    D.  VisionPro Has Additional Defenses That Must Be Applied Individually. .......... 24

    E.  Fairness and Procedural Considerations Mandate Decertification .................... 26

V.  If This Court Permits the Collective Action To Proceed, Which It Should Not, Improper Opt-Ins Should Be Dismissed. ......................................................... 28

VI.  CONCLUSION .................................................................................................. 28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Basco v. Wal-Mart Stores, Inc.*,
    2004 WL 1497709 (E.D. La. July 2, 2004) ...................................................................3

*Batiz v. Am. Com. Sec. Servs.*,
    No. 5:06-cv-00566, at 9 (C.D. Cal. Sept. 22, 2010) ................................................18

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
    772 F. Supp. 2d 1111 (N.D. Cal. 2011) ...............................................................16, 27

*Blakes v. Ill. Bell Tel. Co.*,
    No. 11-cv-336, 2013 WL 6662831 (N.D. Ill. Dec. 17, 2013)...................................16

*Boelk v. AT&T Teleholdings, Inc.*,
    No. 12-240, 2013 WL 3777251 (W.D. Wis. July 19, 2013)......................................22

*Brickey v. Dolgencorp, Inc.*,
    272 F.R.D. 344 (W.D.N.Y. 2011).............................................................................12

*Brown v. ScriptPro, LLC*,
    700 F.3d 1222 (10th Cir. Nov. 27, 2012) ..............................................................2, 22

*Brumbelow v. Quality Mills, Inc.*,
    462 F.2d 1324 (5th Cir. 1972) ...................................................................................2

*Carey v. 24 Hour Fitness USA, Inc.*,
    2012 WL 4857562 (S.D. Tex. Oct. 11, 2012).........................................................12

*Diaz v. Elecs. Boutique of Am., Inc.*,
    2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ......................................................12

*Douglas v. First Student, Inc.*,
    888 F. Supp. 2d 929 (E.D. Ark. 2012).....................................................................14

*Eng-Hatcher v. Sprint Nextel Corp.*,
    2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009).........................................................12

*Espenscheid v. DirectSat, USA, LLC*,
    705 F. 3d 770 (7th Cir. 2013) .............................................................................18, 23

*Espinoza v. Cnty. of Fresno*,
    290 F.R.D. 494 (E.D. Cal. 2013) .............................................................................13

*Frye v. Baptist Mem'l Hosp., Inc.*,
    495 F. App'x 669 (6th Cir. 2012) ............................................................................13

*Gatewood v. Koch Foods of Mississippi, LLC*,
No. 3:07CV82-KS-MTP, 2009 WL 8642001 (S.D. Miss. Oct. 20, 2009) .......................26, 28

*Griffith v. Wells Fargo Bank, N.A.*,
2012 WL 3985093 (S.D. Tex. Sept. 12, 2012) .......................................................................12

*Hadley v. Journal Broadcasting Group, Inc.*,
No. 11-C-147, 2012 WL 523752 (E.D. Wis. Feb. 16, 2012)...................................................20

*Hawkins v. Securitas*,
2011 WL 5598365 .................................................................................................................21

*Hinojos v. Home Depot, Inc.*,
2006 WL 3712944 (D. Nev. Dec. 1, 2006)...............................................................................3

*Hinterberger v. Catholic Health Sys.*,
No. 08-CV-380S, 2014 WL 1278919 (W.D.N.Y. Mar. 27, 2014) .......................12, 13, 16, 21

*Hoffman-LaRoche v. Sperling*,
493 U.S. 165 (1989).............................................................................................................1, 11

*Horn v. Digital Cable & Communications*,
2009 WL 4042407 (N.D. Ohio Feb. 11, 2009) .......................................................................17

*Johnson v. TGF Precision Haircutters, Inc.*,
No. Civ.A. H-03-3641, 2005 WL 1994286 (S.D. Tex. Aug. 17, 2005) ..................................15

*Joza v. WW JFK LLC*,
2010 WL 3619551 (E.D.N.Y. Sept. 10, 2010) ...............................................................2, 3, 24

*Lusardi v. Xerox Corp.*
118 F.R.D. 351 (D.N.J. 1987)................................................................................................27

*MacGregor v. Farmers Ins. Exch.*,
No. 2:10-CV-03088, 2011 WL 2981466 (D.S.C. July 22, 2011).....................................20, 22

*Marshall v. Amsted Rail Co.*,
No. 10-CV-0011-MJR-SCW, 2012 WL 549941 (S.D. Ill. Nov. 13, 2012).......................25, 27

*Martin v. Citizens Fin. Grp., Inc.*,
2013 WL 1234081 (E.D. Pa. Mar. 27, 2013)...................................................13, 16, 20, 25

*Morangelli v. Chemed Corp.*,
922 F. Supp. 2d 278 (E.D.N.Y. 2013) ...................................................................................12

*Morano v. Intercont'l Capital Grp., Inc.*,
2012 WL 2952893 (S.D.N.Y. July 17, 2012) .........................................................................13

*Myers v. The Hertz Corp.*,
2007 WL 2126264 (E.D.N.Y.), *aff'd* 624 F.3d 537 (2d Cir. 2010).......................................18

iii

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010)......................................................................2, 11

*Norceide v. Cambridge Health Alliance*,
   No. 10-11729-NMG, 2014 WL 775453 (D. Mass. Feb. 24, 2014) ......................................15

*Novak v. Home Depot U.S.A., Inc.*,
   259 F.R.D. 106 (D.N.J. 2009)........................................................................28

*Proctor v. Allsups Convenience Stores, Inc.*,
   250 F.R.D. 278 (N.D. Tex. 2008) ..........................................................14, 16, 20

*Reed v. County of Orange*,
   266 F.R.D. 446 (C.D. Cal. 2010) ......................................................14, 15, 20, 26

*Rogers v. Brauer Law Offices, PLC*,
   2012 WL 426725 (Feb. 10, 2012)....................................................................19

*Sandifer v. US Steel Corp.*,
   678 F.3d 590 (7th Cir. 2012) ......................................................................26

*Schremp v. Langlade County*,
   No. 11-C-590, 2012 WL 3113177 (E.D. Wis. July 31, 2012) ................................................22

*Seever v. Carrols Corp.*,
   528 F. Supp. 2d 159 (W.D.N.Y. 2007) ..........................................................2, 3, 24

*Seward v. Int'l Bus. Machine Corp.*,
   2012 WL 860363 (S.D.N.Y. Mar. 9, 2012) ..........................................................13, 26

*Singh v. City of New York*,
   418 F. Supp. 2d 390 (S.D.N.Y. 2005), *aff'd, Singh*, 524 F.3d 361 ..........................................3

*Singh v. City of New York*,
   524 F.3d 361 (2d Cir. 2008)..........................................................................3

*Slayton v. Iowa College Acquisition Corp.*,
   No. 09 C 6977, 2010 WL 3937455 (N.D. Ill. Oct. 5, 2010) ....................................................23

*Smith v. Micron Elecs., Inc.*,
   No. CV-01-244-S-BLW, 2005 WL 5336571 (D. Id. Feb. 4, 2005)............................................14, 20, 23

*Stewart, et al. v. VisionPro Communications, Corp.*,
   No. 1:10-cv-03688, Dkt. #39 ........................................................................24

*Velasquez v. Digital Page, Inc.*,
   303 F.R.D. 435 (E.D.N.Y. 2014) (Wexler, J.) ..........................................................18

*Whineglass v. Smith*,
   2013 WL 2237841 (M.D. Fla. May 21, 2013)..................................................3, 13, 25, 26

iv

*White v. Baptist Mem'l Health Care Corp.*,
   699 F.3d 869 (6th Cir. 2012) ..................................................................2, 21, 23

*Zavala v. Wal Mart Stores Inc.*,
   691 F.3d 527 (3d Cir. 2012)..................................................................11

*Zivali v. AT&T Mobility*,
   784 F. Supp. 2d 456 (S.D.N.Y. 2011)........................................... passim

*Zulauf v. Amerisave Mortg. Corp.*,
   911 F. Supp. 2d 1266 (N.D. Ga. 2012) ..................................................13

## STATUTES

29 U.S.C. 207(i) ..................................................................................17

29 U.S.C. § 255(a) ...............................................................................3

Fair Labor Standards Act ............................................................. passim

Portal-to-Portal Act ..............................................................................26

Under the Portal-to-Portal Act ............................................................25

## OTHER AUTHORITIES

29 C.F.R. § 785.11 ..............................................................................21

29 C.F.R. § 785.47 ..............................................................................26

# I.     __INTRODUCTION__

Plaintiffs are former technicians who assert claims under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). The Court conditionally certified a collective action under the FLSA, finding only that Plaintiffs satisfied their "minimal burden" of making a "modest factual showing" that notice should be issued.  Dkt. #47 at 8.  VisionPro now requests decertification of the collective action and thus dismissal of the opt-in Plaintiffs under the "more stringent" second-stage standard applicable to this motion. *Zivali v. AT&T Mobility*, 784 F. Supp. 2d 456, 460 (S.D.N.Y. 2011).  *See* Dkt. #47 ("During the second step, . . . the Court will conduct a more searching factual inquiry").  Now ***it is Plaintiffs' burden*** to prove by a preponderance of the evidence that this case should proceed as a collective action.  They must prove: (1) that they and all opt-in Plaintiffs are victims of a ***common/illegal*** policy or practice; (2) that they and the more than 100 opt-in Plaintiffs are similarly situated with respect to the claims at issue; and (3) that the case involves "common issues of law and fact arising from the same alleged [unlawful] activity," *Hoffman-LaRoche v. Sperling*, 493 U.S. 165, 170 (1989), such that liability and damages can be established from common evidence and without the need for individual trials.

Plaintiffs cannot meet their burden, and the "stricter, more probing inquiry" mandates decertification.  Plaintiffs and 135 opt-in Plaintiffs are not similarly situated in any way material to the fact issues *to be tried* and thus any attempted collective action trial would devolve into more than 100 mini-trials on each person's varying understanding of the compensation system and time reporting policies, their individual compensation, and their own individualized time recording practices for the hours they now claim they worked but did not report to the Company. This eliminates any notion of judicial economy that is the reason for a collective action.

Plaintiffs may protest that they are similarly situated because they all were classified as exempt, had similar jobs, and had a similar compensation arrangement.  But courts have been

1

clear that is not enough to warrant a trial on a collective basis.    Instead, the decertification analysis must be made by reference to the elements of the claims Plaintiffs must prove and the elements of the defenses, including the inquiry of whether one or more of the plaintiffs is exempt, including under the 7(i) exemption.  *Myers v. Hertz Corp.*, 624 F.3d 537, 549 (2d Cir. 2010) (to proceed on a collective basis, the case must "involve evidence tending to show that the plaintiffs' jobs were similar ***in ways material to the establishment of the" claim***) (emphasis added).

To establish FLSA liability, the factfinder must resolve each of the following issues for each opt-in Plaintiff for each week that he or she worked:

- Whether each opt-in Plaintiff was an FLSA Section 7(i) exempt employee, which Plaintiffs claim turns in part on the accuracy of their reported **and unreported** work hours and also would turn on varying testimony (between even the two of them) about whether compensation was "piece rate" or "commissions";

- If one or more plaintiffs is not exempt, then,  given that their compensation arrangements provided (as a back-up measure) for a base weekly guarantee of the minimum wage for all hours up to 40 and 1.5 times the minimum wage for additional hours, whether each opt-in Plaintiff worked any overtime (and when, and how much);

- Whether each opt-in Plaintiff accurately recorded his or her time using the required timekeeping or any other mechanism, which is necessary to determine if there is and the amount of any liability under either their misclassification theory or the theory of off-the-clock work even under the "back-up" minimum wage arrangement;[1]

- Whether the opt-in Plaintiff was directed to perform the alleged work;[2]

- Whether the alleged uncompensated work was compensable under the law;[3]

---

[1]  *See, e.g., Joza v. WW JFK LLC*, 2010 WL 3619551, at *7 (E.D.N.Y. Sept. 10, 2010) (denying overtime claims, in part, because employee failed to record her time on time records); *Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 170 (W.D.N.Y. 2007) (dismissing off-the-clock claims, in part, because of "the undisputed fact that plaintiffs never reported this work on their timesheets"); *Brown v. ScriptPro, LLC*, 700 F.3d 1222, 1230-31 (10th Cir. Nov. 27, 2012) ("[W]here the employee fails to notify the employer through the established overtime record-keeping system, the failure to pay overtime is not a FLSA violation."); *White v. Baptist Mem'l Health Care Corp*., 699 F.3d 869, 876 (6th Cir. 2012) (affirming decertification because "[u]nder the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process").

[2]  *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972) (affirming dismissal of off-the-clock claim where plaintiff was not directed to perform work off-the-clock).

- Whether VisionPro had actual or constructive knowledge of the alleged uncompensated work, which turns in part on varying opt-in Plaintiffs' knowledge and understanding of time reporting policies and their individual interactions with varying managers;[4]

- Whether Defendant can amend its answer based upon proof at trial for any Plaintiff who falsified their time reports, giving rise to, *inter alia*, claims of fraud, breach of contract and or faithless servant for violating Company time recording policies;

- The extent to which each of the multiple Defendants named in the Complaint (VisionPro Communications Corp., VisionPro Corp., Kevin Silvar or Joseph Romano) were "employers" of each opt-in Plaintiff within the meaning of the FLSA;

- Whether  the named and Opt-In Plaintiffs can prove any damages, by showing with admissible proof that,  in each workweek,  he or she worked more than 40 hours without compensation with "specific facts establishing when, and for how long, she performed the [] tasks for which she now seeks compensation."[5]

Even if any opt-in Plaintiff could meet his or her burden of proving each of the above elements, the

following additional issues of damages and defenses also would have to be tried:

- Whether the Opt-In can prove that any unlawful failure to pay overtime to him or her was willful (and thereby add a third year to the statute of limitations, 29 U.S.C. § 255(a));[6]

- Whether VisionPro can demonstrate that any purported failure to pay overtime to any opt-in Plaintiff was based on a good faith belief that it was in compliance with the law based on the 7(i) exemption (and thereby defeat a claim for liquidated damages); and

- Whether there are other individualized defenses such as the limitation period or a release.

Plaintiffs have not come up with any common proof for these various fact issues during

discovery, much less all of them.  Rather, discovery revealed material differences among even

---

[3]  *Singh v. City of New York*, 524 F.3d 361, 364, 367 (2d Cir. 2008) (affirming summary judgment because work time was "de minimis as a matter of law and thus not compensable under the FLSA" and recognizing that preliminary and postliminary activities are not compensable); *Basco v. Wal-Mart Stores, Inc.*, 2004 WL 1497709, at *8 (E.D. La. July 2, 2004) (denying certification where individualized defenses included whether activities were pre/post-liminary).

[4]  *Singh v. City of New York*, 418 F. Supp. 2d 390, 397 (S.D.N.Y. 2005) (noting factfinder must determine "how much of that time was spent with the employer's actual or constructive knowledge"), *aff'd*, *Singh*, 524 F.3d 361; *Hinojos v. Home Depot, Inc.*, 2006 WL 3712944, at *3 (D. Nev. Dec. 1, 2006) (denying conditional certification where individualized inquiry would be required into whether each supervisor knew about the off-the-clock work).

[5] *Joza*, 2010 WL 3619551, at *7 (quoting *Seever*, 528 F. Supp. 2d at 169-70).

[6] *Whineglass v. Smith*, 2013 WL 2237841, at *9 (M.D. Fla. May 21, 2013) (decertifying FLSA collective because the defenses of willfulness and good faith could be determined only with respect to each individual plaintiff).

the named Plaintiffs, requiring an individualized inquiry of these elements for each named and Opt-In Plaintiff.   The record demonstrates that one technician's experiences could not be representative of any other.   The only evidence of anything common are robust policies requiring technicians to report and be paid for all time worked.   Thus, only individualized violations of VisionPro's policies would result in the alleged off-the-clock work that Plaintiffs believe defeats the 7(i) exemption and also dooms the back-up "minimum wage plus overtime" approach.

Finally and importantly, fairness and procedural efficiency concerns favor decertification. Individual trials would be required to adjudicate the claims of each Opt-In Plaintiff. Determining whether each Plaintiff engaged in any pre-shift, post-shift, or lunch break work activities, why they did so, for how long, whether they reported the activity, the reasons why they failed to report it, whether VisionPro or any individual Defendant was aware, and whether there is any other basis to impute liability, would require technician-by-technician inquiries at trial.   No Opt-In Plaintiff could prove his or her claim other than by his or her own testimony, other witnesses with knowledge of him or her, and documents specific to him or her.   VisionPro must be permitted to cross-examine and challenge the credibility of each Opt-In Plaintiff and present contrary testimony by managers and co-workers, present contrary documentary evidence like time sheets signed over and over again confirming the accuracy of their reported work hours, and assert other individualized defenses.   As set forth in more detail below, VisionPro respectfully requests that the Court decertify the collective action and dismiss the claims of the Opt-In Plaintiffs.   This dismissal would be without prejudice to any Opt-In Plaintiffs filing any timely individual actions if they wish to do so, and they already are represented by counsel. Given the availability of statutory fees under the FLSA, there is no reason that any Opt-In Plaintiff who wished to do so could not fully vindicate claimed rights in individual litigation.

## II.   PROCEDURAL HISTORY

Plaintiffs seek a collective action of current and former cable technicians.  Dkt. #15 ¶ 47.

The Court granted conditional certification.  Dkt. #47.  Then 135 current or former technicians

returned Consent to Join forms.[7]  VisionPro now moves to decertify the collective action.

## III.   FACTUAL BACKGROUND

### A.   VisionPro and Plaintiffs

VisionPro is a small business owned and operated by Defendants Joseph Romano and

Kevin Silvar.  Amended Complaint ¶¶ 27-42.[8]  VisionPro is a contractor that provides cable

installation and repair services.  *See id* ¶¶ 2-4.  Cable television companies engage VisionPro to

perform installation, disconnect, and repair services for their customers.  *Id.*  Plaintiffs and the

135 collective action members are current and former VisionPro technicians.

#### 1.   VisionPro's Policies Mandate FLSA Compliance, As Technicians Must Accurately Report Time Worked To Ensure Proper Payment.

A central issue at trial will be the individualized inquiry of which, if any, technicians

violated VisionPro time recording policies.  VisionPro's Employee Handbook is explicit that all

hours worked must be recorded and paid and that off-the-clock work is strictly prohibited:

RECORDING HOURS WORKED

Technicians are responsible for accurately reporting all hours worked and for
confirming the accuracy of the reported work hours and other information in the
weekly commission statement provided to them.  Technicians are prohibited from
working unreported hours ("off-the-clock" work) and will be subject to discipline,
which may include termination, for such conduct and otherwise failing to correct
any inaccurate information in the weekly commission statement.

---

[7]   135 technicians filed 137 Consent to Joint forms.  Two technicians, Sherwin Williams
and Daniel Manning, each filed two Consent to Join forms.  *See* Dkt. Nos. 73, 74, 114, and 115.
Many of the 135 opt-ins are improper for reasons discussed *infra* at 28.

[8]   Unless otherwise designated with a prior docket number, all cited evidence is attached as
exhibits in alphabetical order to the Declaration of Kevin Silvar ("Silvar Dec.") filed herewith.

<u>MEAL BREAKS</u>

. . . . Technicians will be paid for all hours actually worked, including lunch breaks of 30 minutes or less if the Technician is not completely relieved of his duties during that 30 minute period.

Silvar Dec. ¶ 21 and Ex. G.  Plaintiffs signed acknowledgments that they read and understood the terms of the Handbook.  Silvar Dec. ¶ 21 and Ex. G.

Additional policies reinforce that Technicians should not work outside of their shifts, but they must record their time if they do.  Silvar Dec. ¶ 22 and Ex. H.  The Policy on Recording Hours Worked requires that "all employees . . . maintain an accurate record of their hours worked," and "[e]very employee must accurately record his or her time" and that "[f]alsification of time records will lead to disciplinary action, up to and including termination." *Id.*  That Policy applies to technicians who elect to take their truck home at the end of the day without returning to the facility. *Id.*  Those technicians call into the dispatch office and report the end time of their last job. *Id.*  Other technicians, who return to the facility at the end of the day, are required to scan or sign out at that time. *Id.*  Plaintiffs provided varying testimony as to whether they received and reviewed the time reporting policies. Watson Dep. 58-65; Lewis Dep. 102-104.

Plaintiffs complete their own daily time sheets to enter their work time and thus write in their own start and stop work/lunch times.  Romano Dep. 58-60 (daily time sheets completed by technicians themselves); Silvar Dec. ¶ 73 and Ex. ZZ at No. 6 (Plaintiffs admitted that they "recorded the hours that they worked on a Daily Work Sheet").  The time sheets require that Plaintiffs accurately record their "start time," "lunch start," "lunch stop," "stop time," and "total hours worked" so they are paid for every minute they work.  Silvar Dec. ¶¶ 19-20 and Exs. E and F; Romano Dep. 25, 28-29 (technicians are to report start time, stop time and lunch times each day).  In doing so, he or she "certif[ies] that [it] reflects a true and actual representation of all

6

jobs and hours worked by me on the work date specified."  Silvar Dec. ¶¶ 19-20 and Exs. E and F.  The technician "also certif[ies] that [he or she] ha[s] [a] mandatory 30 minutes [*sic*] break for the work date specified."  *Id.*  The time sheets include a space for "manager approval."  *Id.*

Plaintiffs may argue that common policies and forms support a collective action, but that point is irrelevant since their claim is that they ignored or violated those policies and should be compensated for additional hours.  Because the time recording policies were allegedly not followed there is no judicial efficiency associated with the fact that they exist.  In a collective action trial or individual trials, what would have to be tried is each individual's understanding of the policies, claimed contrary statements, if any, to them by supervisors, claimed off-the-clock work contrary to the policies, and the other individualized issues noted above.

### B.      VisionPro Technicians' Compensation

VisionPro technicians are paid on a commission basis, or alternatively on an hourly basis at the minimum wage rate plus overtime if their commissions would not exceed the hourly wages.  The terms are governed by a Technician Commission Agreement.  Silvar Dec. ¶ 15 and Ex. D.  Commissions are calculated depending upon the work they perform for VisionPro's customers, cable service providers.  *Id.*  The providers pay varying amounts depending on the nature of each service.  *Id.*; Romano Dep. at 42-43.  VisionPro allocates to technicians a percentage of those amounts as credits towards commissions for their work.  *Id.*; Romano Dep. at 42-43.  Plaintiffs cannot dispute this calculation given their testimony that they did not know how the amounts were calculated.  Watson Dep. 58-76; Lewis Dep. 56-57.

Technicians' commissions are calculated and advanced weekly.  *Id.*  If, based upon the hours that he or she reported, a technician's weekly commissions equated to less than the statutory minimum wage per hour up to 40 hours and one and a half times the minimum wage per hour for hours over 40, which rarely is the case, VisionPro ensures through a floor that the

statutory minimums are paid. *Id.* (guaranteeing "the opportunity to earn a weekly payment of the minimum wage per hour for all hours worked up to 40 in a week and time and a half for all hours over 40 in a week."); Romano Dep. 20; 56-57 (technicians paid an hourly and an overtime rate for hours over 40 in a work week or receive the commission-based compensation if higher).

Typically, technicians earn well above this "Minimum Commission Period Payment". *Id.* In fact, technicians were paid quite fairly under this arrangement and could make $1,000 to $2,000 per week even with only a high school education. Watson Dep. 35-37, 76-77.

Technicians' payment for each task is a percentage commission on the amount the cable provider pays to VisionPro. Romano Dep. 42-43. The percentages vary (i.e., increase) by the level of the technician. *Id.* So under this compensation arrangement, technicians also have the ability to grow their compensation by performing services quickly and efficiently, by selling additional jobs for the day and by up-selling customers. *See id.* By securing additional jobs or upselling, the technicians increased their commission credits which were dependent upon what VisionPro earned from the cable television companies that engaged VisionPro. *See id.* In addition, because VisionPro rewards the best performing technicians with higher value jobs, technicians can increase their compensation simply by improving their performance. *See id.*

Despite the language of the Agreement that commissions are the basis for compensation, Plaintiffs contend they were paid a "piece rate". *See, e.g.*, Order, Dkt. #212 (noting Plaintiffs contend they were paid by "piece-rate" and finding that fact issues, including, *inter alia*, whether plaintiffs were properly classified as exempt and properly compensated, precluded summary judgment). But Plaintiffs testified that they did not know how the commissions were calculated even though they signed the Agreement and a Notice and Acknowledgement of Wages concerning commissions. Watson Dep. 58, 76; Lewis Dep. 56-57; Silvar Dec. ¶¶ 21-23 and Exs.

G-I .  And their testimony concerning their compensation presents individualized conflicts as to the type of compensation they received.  While Plaintiff Watson testified that the compensation was "piece rate," Plaintiff Lewis equates the "piece rate" with a commission.  Watson Dep. 57; Lewis Dep. 83.  Moreover, while Plaintiff Lewis claims that his manager specifically told him he would be paid by piece rate (contrary the Agreement), Lewis Dep. 75-76, Plaintiff Watson could not recall any discussions about how he would be paid when he was hired.  Watson Dep. 58-60.

C.     **Plaintiffs Had Varying Experiences.**

As discussed above, certain technicians ended their day at their homes, meaning they did not drive back to the facility after a final customer.  Lewis 48-49.  Other technicians returned to the facility, and still others have done both or neither.  *Id.* Silvar Dec. ¶ 22 Ex. H.  These distinctions have important ramifications.  If technicians who ended their day at home engaged in any activities at or after the time that they parked at home, but after reporting their stop time, they did so at home, *away from any management oversight.*

How Plaintiffs' work days were spent also varied.  "There [was] no set time when the workday ends for Plaintiffs and [the other Opt-In] technicians."  Dkt. #15 at ¶ 3.  "The number of installation and service appointments performed by Plaintiffs varie[d] each day, as [did] the length of time required to complete each appointment."  *Id.* ¶ 3; Romano Dep. 37-39 (work hours vary from technician-to-technician and day-to-day); Silvar Dec. ¶73 and Ex. ZZ at Interrogatory Response No. 3 ("There is not fixed time when the workday ended for Plaintiffs as the number of installations and service appointments varied each day, as did the length required to complete each appointment.").  For example, Plaintiff Lewis sometime had hours of down time between his "start time" and his first customer job (i.e., when his first customer would answer his door for service). Lewis Dep. 32-33.  Plaintiff Lewis would relax at a shopping mall

or sit in his car enjoying a soda until the customer was available.  Lewis Dep. 32-33.  There is no common proof that could be offered as to start and stop times or as to any breaks.

Plaintiffs claim they had to work off-the-clock before their start times or after their end times or during lunch.  Silvar Dec. ¶ 73 and Ex. ZZ at Interrogatory Response No. 7.  However, Plaintiffs believe "it was impossible to state with precision each and every instance in which such work was performed and the precise hours worked by either Plaintiff on that day."  *Id.*  And even the two named Plaintiffs gave varying testimony.  Plaintiff Watson testified that he worked off-the-clock for hours each day because he would list as his start time his arrival at the first customer location rather than arrival at the warehouse.  Watson Dep. at 96-98.  Lewis, in contrast, testified that he listed as his start time his arrival at the warehouse.  Lewis Dep. at 111-12, 51, 54.  So not even the two named Plaintiffs tell a consistent story of off-the-clock work.

Plaintiffs' reasons for allegedly working off the clock also vary.  For example, Plaintiffs contend they were instructed by various supervisors (contrary to policy) to indicate they took a break for a meal period on their Daily Work Sheet even when they had not.  *Id.* at No. 9; Lewis Dep. 51-53.  In addition, the ability to take breaks varied because of the timed schedule of their customer jobs.  Lewis Dep. 51-53.  Consequently, why each technician failed to report some or all of his or her claimed compensable activity varied from technician-to-technician.

Plaintiffs' experiences also varied depending on their particular supervisor.  VisionPro's management held meetings where they instructed technicians on the mandatory requirement to take lunch breaks.  Romano Dep. 60-61.  Plaintiff Lewis testified, however, to working through lunch because certain supervisors allegedly would not agree with taking a lunch break.  Lewis Dep. 53.  Plaintiff Lewis, however, did not personally ever tell a manager that he was not taking his half an hour lunch break, but other technicians informed supervisors during meetings that the

10

technicians had not taken a lunch break – an individualized inquiry into VisionPro's constructive knowledge of the alleged off-the-clock work.  Lewis Dep. 54.

IV.   **ARGUMENT**

    A.   **Plaintiffs Cannot Meet Their Burden To Demonstrate That The Case Should Proceed As A Collective Action.**

At the second stage of the FLSA certification analysis, the Court's inquiry becomes more "stringent."  Unlike the "lenient" standard applied to the initial conditional certification,  in considering decertification "the Court, now afforded a much fuller record, must apply a more 'stringent standard' of proof in determining whether the plaintiffs are similarly situated for the purposes of the FLSA." *Zivali v. AT&T Mobility LLC*, 784 F. Supp. 2d at 460 (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) ("At the second stage, the district court will, on a fuller record, determine whether the so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.").

*It is Plaintiffs' burden* to establish "by a preponderance of the evidence . . . [that] 'the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.'" *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 537 (3d Cir. 2012) (affirming decertification of collective action) (quoting *Myers*, 624 F.3d at 555); *Zivali*, 784 F. Supp. 2d at 460 ("The burden is on the named plaintiff to prove that the other employees are similarly situated.").  If Plaintiffs fail to establish that more than 100 technicians are similarly situated, the collective "may be 'de-certified'" and the "opt-in plaintiffs' claims may be dismissed without prejudice."  *Myers*, 624 F.3d at 555.  Fundamentally, a collective action must serve the purpose of judicial efficiency. *Sperling*, 493 U.S. at 170 ("The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged discriminatory activity.").

To determine whether Plaintiffs met their second-stage burden, this Court should consider: (1) the disparate factual and employment settings of the technicians; (2) the defenses which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against collective action treatment. *Zivali*, 784 F. Supp. 2d at 460.

## B. Courts Routinely Decertify Collective Actions That Rely On Claimed Off-The-Clock Work.

"Off-the-clock cases can present challenges for class-wide determination that often preclude certification." *Morangelli v. Chemed Corp.*, 922 F. Supp. 2d 278, 306 (E.D.N.Y. 2013). New York courts repeatedly have decertified collective actions that turn on off-the-clock allegations where, as here, companywide policies are lawful and the allegations that the policies sometimes were not followed are individualized and manager-specific.[9] For example, in *Hinterberger*, 2014 WL 1278919, at *30, 34, the court decertified an off-the-clock collective action where the official policies complied with the FLSA, plaintiffs provided varying testimony that they sometimes performed work during unpaid lunch breaks, they sometimes did not record

---

[9] Indeed, courts routinely refuse to even ***conditionally*** certify off-the-clock collective actions due to the individualized evidence required to prove an off-the-clock claim. *See, e.g., Eng-Hatcher v. Sprint Nextel Corp.*, 2009 WL 7311383, at *4 (S.D.N.Y. Nov. 13, 2009) (denying conditional certification of nationwide action because alleged policy of "maximizing sales and minimizing overtime" was insufficient to infer that all managers forced employees to work off-the-clock); *Brickey v. Dolgencorp, Inc.*, 272 F.R.D. 344, 347-48 (W.D.N.Y. 2011) (denying conditional certification because policy budgeting hours of work was not "a 'common policy or plan that violate[s] the law'"); *Diaz v. Elecs. Boutique of Am., Inc.*, 2005 WL 2654270, at *4-5 (W.D.N.Y. Oct. 17, 2005) (holding that the "[Plaintiff]'s allegations … that he worked "off-the-clock without compensation and that his timesheets were altered to delete overtime hours worked are too individualized to warrant collective action treatment."); *Griffith v. Wells Fargo Bank, N.A.*, 2012 WL 3985093, at *2-5 (S.D. Tex. Sept. 12, 2012) (where employees made individual choices to inaccurately report work time based on "office-specific experiences relating to the actions of office or division supervisors[,]" action should not proceed on a collective basis); *Carey v. 24 Hour Fitness USA, Inc.*, 2012 WL 4857562, *2 (S.D. Tex. Oct. 11, 2012) (denying conditional certification because "[w]hether a Club Manager would be willing to violate the … written company policy against 'off-the-clock' work … requires an inquiry into the motivation and ethics of each Club Manager").

the work but other times recorded and were paid overtime compensation for the work, and some of their managers would not know about the work.  The court held that the case was not appropriate for class or collective action treatment because "the question of [the employer's] liability will come down to whether, on a department specific basis, a particular supervisor did not follow [the employer's] [lawful] directive … discouraged the reporting of mealtime work, or knew the work was performed but did not audit and correct time cards as required."  *Id.*

*Hinterberger* aligns with numerous other New York decisions decertifying collective actions based on off-the-clock allegations.  *See Morano v. Intercont'l Capital Grp., Inc.*, 2012 WL 2952893, at *6-9 (S.D.N.Y. July 17, 2012) (decertifying off-the-clock collective action where the opt-ins reported to different managers who may or may not have demanded unpaid work); *Seward v. Int'l Bus. Machine Corp.*, 2012 WL 860363, at *1 (S.D.N.Y. Mar. 9, 2012) (decertifying off-the-clock collective action because plaintiff failed to establish "sufficiently uniform and pervasive policy requiring off-the-clock work," and "potential defenses were highly fact specific and w[ould] likely depend on the testimony of individual plaintiffs and managers"); *Zivali*, 784 F. Supp. 2d at 468 (decertifying off-the-clock collective).[10]

---

[10]  Courts in other jurisdictions also regularly decertify off-the-clock cases.  *See, e.g., Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 672 (6th Cir. 2012) (affirming decertification of off-the-clock collective action that relied on employees' varying experiences); *Whineglass*, 2013 WL 2237841, at *5 (decertifying off-the-clock collective action because "discovery show[ed] there [we]re distinct circumstances surrounding each plaintiff's overtime claim," including the reasons they worked off the clock, there was no common decision, policy or plan to violate the FLSA, and individualized defenses existed); *Martin v. Citizens Fin. Grp., Inc.*, 2013 WL 1234081, at *5 (E.D. Pa. Mar. 27, 2013) (decertifying off-the-clock collective action where evidence showed that decisions complained of were "in direct conflict with Defendants' written policy of complying with [the FLSA]"); *Espinoza v. Cnty. of Fresno*, 290 F.R.D. 494, 496 (E.D. Cal. 2013) (decertifying off-the-clock collective action where plaintiffs' claims "ar[o]se out of disparate factual and employment settings[,] … rebutting them will require individual defenses, and the interests of judicial efficiency will be frustrated if these claims proceed on a collective basis"); *Zulauf v. Amerisave Mortg. Corp.*, 911 F. Supp. 2d 1266, 1271 (N.D. Ga. 2012) (decertifying off-the-clock collective action where plaintiffs produced no evidence showing a

**C.** **Plaintiffs' Disparate Factual and Employment Settings Confirm That There Is No Common Basis On Which To Adjudicate Claims.**

As noted, in determining decertification, courts have considered the varying factual and employment settings experienced by the named and opt-in plaintiffs as they pertain to the elements of the claim that plaintiffs must establish and of the defenses advanced. Here, there are significant differences in the factual and employment settings even just between the two named Plaintiffs, let alone the experiences of more than 100 others. And no plaintiff can testify for any other given that technicians worked separately in the field and filled out their own time sheets.

**1.** **Plaintiffs Fail To Establish A Common Policy Or Plan Necessary To Sustain A Collective Action.**

In assessing whether plaintiffs had disparate factual and employment settings, courts consider whether they have "provided substantial evidence that their claims arise out of a single policy, custom or practice that leads to FLSA violations." *See, e.g., Reed v. County of Orange*, 266 F.R.D. 446, 450 (C.D. Cal. 2010); *see also Camilotes*, 286 F.R.D. at 346. An allegation of "an overarching policy is generally insufficient; plaintiffs must produce substantial evidence of a single decision, policy or plan … that permitted off-the-clock work." *Smith v. Micron Elecs., Inc.*, No. CV-01-244-S-BLW, 2005 WL 5336571, at *2 (D. Id. Feb. 4, 2005) (finding disparate settings when defendant did not have a common, *de facto* policy of permitting off-the-clock work). "Decertification is proper if the action relates to specific circumstances personal to the plaintiff rather than any generally applicable policy or practice." *See Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280-81 (N.D. Tex. 2008). Or, as the Supreme Court explained in *Wal-Mart Stores, Inc. v. Dukes,* in the Rule 23 context, class claims are not viable

---

unified "company-wide 'policy-to-violate-the-policy'" of forcing employees to underreport their time); *Douglas v. First Student, Inc.*, 888 F. Supp. 2d 929, 934 (E.D. Ark. 2012) (decertifying collective action due to necessary individual inquiries into whether any class members worked off-the-clock during any week, and, if so, how many hours).

unless they depend upon a "common contention … of such a nature that it is capable of classwide resolution." 131 S.Ct. 2541, 2551 (2011).

As the facts above make clear, Plaintiffs cannot point to a common policy or practice to explain their alleged off-the-clock work that they believe defeats the 7(i) exemption as well as the back-up minimum wage/overtime compensation.  To the contrary, by way of example, Plaintiffs blame a variety of factors, such as varying supervisor instructions (contrary to policy) and choices to eat a snack or the timing of the customer appointments, to explain why they allegedly engaged in work off-the-clock.  Not surprisingly then, Plaintiffs likewise disagree on the type, frequency, and duration of the alleged off-the-clock activities at issue – noting that "it was impossible to state with precision each and every instance in which such work was performed and the precise hours worked by either Plaintiff on that day."  Silvar Dec. ¶ 73 and Ex. ZZ at No. 7. Given that admission, Plaintiffs have no common evidence that would eliminate the need for individualized testimony and cross-examination of each Opt-In Plaintiff at trial.

 "The foregoing conglomerate of diverse evidence indicates that some Plaintiffs may have prima facie claims for FLSA violations at different times, in different places, in different ways, and to differing degrees, but the evidence of varied particular violations is insufficient to show that Defendants implemented a uniform, systematically applied policy of wrongfully denying overtime pay to Plaintiffs." *Johnson v. TGF Precision Haircutters, Inc.*, No. Civ.A. H-03-3641, 2005 WL 1994286, at *4 (S.D. Tex. Aug. 17, 2005); *see also Norceide v. Cambridge Health Alliance*, No. 10-11729-NMG, 2014 WL 775453, at *3 (D. Mass. Feb. 24, 2014) ("The record suggests that the reasons for missed meal breaks and working before and after scheduled shifts varied widely as did the propensity of opt-in members to request overtime pay for extra work."); *Reed*, 266 F.R.D. at 450 ("Plaintiffs' factual and employment settings differ with

respect to their pre-shift, post-shift [sic] missed meal break and work taken home claims, and additionally, Plaintiffs have not provided substantial evidence of a single [ ] decision, policy or plan to violate the FLSA with respect to those claims."). *Cf. Hinterberger v. Catholic Health Sys.*, No. 08-CV-380S, 2014 WL 1278919, at *30 (W.D.N.Y. Mar. 27, 2014) (employees attested to "various reasons for not reporting work during meal periods" (from "'I don't know [why]. I just never did,' to '[our supervisor] made us feel we were not doing our jobs [if we had to work during lunch].'")); *Zivali v. AT&T Mobility, LLC*, 784 F. Supp. 2d 456, 467 (S.D.N.Y. 2011) (citing plaintiffs' testimony they did not report time worked as required by the employer's policy because they did not believe it was compensable or it was performed for their own benefit without informing management).

Indeed, the only common VisionPro policies are *lawful* ones, and are alleged to have NOT been complied with. *See Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1123-24 (N.D. Cal. 2011) (decertification appropriate when defendant's official policy was to pay for all hours worked, even when plaintiffs offered "substantial evidence that many [employees] did perform off-the-clock work"); *Proctor*, 250 F.R.D. at 282 ("no evidence of a single decision, policy, or plan" causing off-the-clock work, "[i]n fact, the evidence indicates that [defendant]'s official policy was to prohibit working off the clock.").  And to the extent Plaintiffs claim that the commission-based compensation system is the claimed common policy, there is no dispute their challenge to that policy relies heavily on the alleged off-the-clock work.

Absent an illegal common policy or practice, it takes individual inquiries "to get to the bottom of liability" on Plaintiffs' claims given their reliance on alleged off-the-clock work. *See e.g.*, *Blakes v. Ill. Bell Tel. Co.*, No. 11-cv-336, 2013 WL 6662831 (N.D. Ill. Dec. 17, 2013), at *11 (decertifying technician off-the-clock claims); *Martin v. Citizens Fin. Group, Inc.*, No. 10-

260, 2013 WL 1234081, at *6 (E.D. Pa. Mar. 27, 2013) ("Even if Plaintiffs' allegations are accepted as true, Defendants' policies do not appear to be a single decision, policy, or plan, but rather policies and practices that impacted individual plaintiffs in individual ways.").

**2.     Whether Technicians Worked Off-The-Clock And Are Entitled to Overtime Beyond What Was Paid Requires Individualized Inquiries.**

**a.     Whether Technicians Qualified for the Section 7(i)  Exemption Is An Individual Inquiry.**

As discussed above, no common policy, practice or procedure has been identified that can be used to prove, for more than 100 technicians, that they did not meet the Section 7(i) exemption.   There is no question that the Section 7(i) exemption ultimately may apply to technicians like Plaintiffs.   *See* 29 U.S.C. 207(i); *Horn v. Digital Cable & Communications*, 2009 WL 4042407 (N.D. Ohio Feb. 11, 2009) (holding that cable television technicians are exempt from overtime requirements under the Section 7(i) exemption).   But evaluating the applicability of the Section 7(i) exemption will require individualized determinations in light of alleged fact issues identified in the Court's denial of summary judgment in this action.

Specifically, it is Plaintiffs' position, as it must be to prove misclassification, that the Section 7(i) exemption does not apply because the technicians were not paid a sufficient amount **given alleged off the clock work that was not paid**.   But in having to decide whether off-the-clock work occurred, the trier of fact will be required to analyze each opt-in Plaintiff's daily work activities, understanding of the time reporting policies, how time was reported, and whether unreported time was compensable. *See,* Order, Dkt. #212 (denying summary judgment because questions of fact existed concerning whether Plaintiffs could meet the section 7(i) exemption requirements); Dkt. #47; (granting conditional certification and reserving for the second stage whether named and opt-in plaintiffs "fall within" the section 7(i) exemption).   Plaintiffs have not identified any way through which these "questions of fact" could be addressed by the Court on

17

anything other than an individualized basis, and given the need for so many individualized inquiries decertification is warranted. *See, e.g., Myers v. The Hertz Corp.,* 2007 WL 2126264 (E.D.N.Y.), *aff'd* 624 F.3d 537 (2d Cir. 2010); *Velasquez v. Digital Page, Inc.*, 303 F.R.D. 435, 442 (E.D.N.Y. 2014) (Wexler, J.) (Section 7(i) exemption requires "highly individualized inquiry"); *Espenscheid v. DirectSat, USA, LLC*, 705 F. 3d 770 (7th Cir. 2013) (affirming decertification of collective action since liability determination required examination of the amount of time each individual devoted to particular activities).

**b. Whether Plaintiffs and Each Opt-In Worked Overtime, And How Much, Also Requires Individualized Inquiry.**

Even if the Court determined that all opt-in Plaintiffs were misclassified as exempt, the need for individualized analyses would not end because the Agreement guaranteed all technicians at least minimum wage for all hours worked and 1.5 times that wage for all overtime hours – a perfectly lawful alternative to the 7(i) exemption. The trier of fact thus would have to conduct individualized analyses to determine whether overtime was even worked, and was known to the Company. Putting aside the liability questions of why any technician violated time reporting policies, whether off-the-clock work was compensable or instead preliminary/postliminary or *de minimis*, and whether VisionPro knew or should have known of the work, are individualized damages inquiries that compel decertification. *Hernandez*, 2010 WL 1337702, *5 ("[E]ven if liability could be determined on a class-wide basis, the court would still face the prospect of having to determine individualized damages"); *Batiz v. Am. Com. Sec. Servs.*, No. 5:06-cv-00566, at 9 (C.D. Cal. Sept. 22, 2010) (decertifying class because individual damages testimony, or computing damages based on a sample, was inappropriate)

The Amended Complaint, discovery, and deposition testimony establishes that the technicians did not work identical or even similar hours, and the differences substantial. *See,*

18

*e.g.,* Dkt. #15, Amended Compl. ¶ 6 (number of overtime hours on earning statement allegedly bears no relationship to actual hours worked); *id* ¶ 3 ( "The number of installation and service appointments performed by Plaintiffs varie[d] each day, as [did] the length of time required to complete each appointment."); Romano Dep. 37-39 (work hours vary from technician-to-technician and day-to-day); Silvar Dec. ¶ 73 and Ex. ZZ at Interrogatory Response No. 3 ("There is not fixed time when the workday ended for Plaintiffs as the number of installations and service appointments varied each day, as did the length required to complete each appointment."); Silvar Dec. ¶ 73 and Ex. ZZ at Interrogatory Response No. 7 ("It was impossible [for Plaintiffs] to state with precision each and every instance in which such work was performed and the precise hours worked by either Plaintiff on that day.").   Each plaintiff would thus need to adduce individualized evidence regarding the hours he or she allegedly actually worked. *See Rogers v. Brauer Law Offices, PLC*, 2012 WL 426725, at *5-6 (Feb. 10, 2012) (holding that an FLSA plaintiff must "produce[] sufficient evidence to show an amount of overtime . . . ").

VisionPro would then be entitled to cross-examine each employee who is propounding their "guess" about work hours and put on rebuttal testimony. This would include reviewing with each technician his or her understanding of time reporting policies, contrary supervisor statements, why else policies were not followed, and why they falsely confirmed the amount of time worked by signing time sheets saying reported work hours were accurate.  Silvar Dec. ¶¶ 19 and 20 and Exs. E and F.  The results can have a dramatic difference upon liability and also upon available damages.   If, for instance, a technician never worked more than 40 hours in a workweek that individual would not have been injured and could not pursue an overtime claim.

     **c.**     **Whether And Why Named and Opt-In Plaintiffs Ignored Policies Requires An Individualized Inquiry.**

Plaintiffs provided varying testimony on whether they received/reviewed time reporting policies (Watson Dep. 58-65; Lewis Dep. 102-104), and also on alleged contrary guidance from supervisors for reporting work hours (Lewis Dep. 52-53). These supervisor-level inquiries further favor of decertification. *See Smith*, 2005 WL 5336571, at *2 (factual and employment settings varied when some plaintiffs testified they worked off-the-clock only with certain supervisors); *Proctor*, 250 F.R.D. at 283 (citing plaintiffs' testimony of working off-the clock under certain managers but not others); *Reed*, 266 F.R.D. 459 (plaintiffs based their decision on whether to request overtime on the identity of the particular supervisor); *Martin*, 2013 WL 1234081, at *4 (recognizing plaintiffs testified to being denied overtime under one manager but not another); *MacGregor v. Farmers Ins. Exch.*, No. 2:10-CV-03088, 2011 WL 2981466, at *3 (D.S.C. July 22, 2011) (certification rejected when plaintiffs admitted company policy was to compensate all time worked, meaning "each supervisor's actions are essential to establishing any violation of the law").

The supervisor-specific focus is critical because the policies prohibited off-the-clock work, but some Plaintiffs such as Lewis appear to have *inferred* a contrary instruction from managers or *assumed* their supervisor wanted them to work off-the-clock. "[E]ach employee's own subjective interpretation of his supervisor's directive would require an individualized, rather than common, approach." *Hadley v. Journal Broadcasting Group, Inc.*, No. 11-C-147, 2012 WL 523752, at *4 (E.D. Wis. Feb. 16, 2012). Indeed, ***even conditional certification is inappropriate*** when "most Plaintiffs provide no evidence that their supervisors actually told them they must perform work off-the-clock, nor do most Plaintiffs provide proof of any rejected request for overtime pay for the tasks in issue." *Richardson*, 2012 WL 334038, at *4. Testimony that individuals simply "believed that they had to work off the clock is NOT enough. *Id*.

20

### 3. Whether Defendants Had Actual or Constructive Knowledge of Alleged Overtime Work Will Require Individualized Inquiries.

Moreover, Plaintiffs have not provided any common basis on which to determine whether managers for each technician knew or should have known of any alleged unpaid overtime, because there is none. *Zivali*, 2011 WL 1815391, at *7 (decertifying FLSA collective action in part because of individualized issues where "plaintiffs will have to demonstrate that each individual manager had actual or constructive knowledge that plaintiffs were performing off-the-clock work"). To establish liability, Plaintiffs must prove that management knew or had reason to believe that the individual performed unpaid work, i.e., that VisionPro had actual or constructive knowledge. *See* 29 C.F.R. § 785.11. *See also, e.g., Hawkins v. Securitas*, 2011 WL 5598365, at *9 (collecting cases); *see also Kuznyetsov*, 2011 WL 6372852, at * 6 (necessary to consider whether defendants had knowledge plaintiff worked through a meal break, whether plaintiffs was compensated for that time, and, if not, whether defendant knew plaintiff was not properly compensated, making the "knowledge and testimony of each individual manager [ ] highly relevant and necessary for Defendants' defenses to the allegation"); *Prise*, 2011 WL 4101145, at *25, 27 (discussing same concept); *Hinterberger*, 2014 WL 1278919, at *14.

Actual or constructive knowledge can only be evaluated on an individual-by-individual basis. Plaintiffs' own testimony casts doubts on whether their managers knew of any off-the-clock work, particularly since policies and management mandated that Plaintiffs report all hours worked and were subject to discipline, up to and including termination, if they did not. *See* Lewis Dep. 54 (Q: "Did you personally ever tell a manager that you were not taking your half hour lunch break? A: No."); *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877-78 (6th Cir. 2012) (affirming decertification and summary judgment for employer), *pet. for reh'g denied*, 134 S. Ct. 29 (Oct. 7, 2013) ("If an employer establishes a reasonable process for an

employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process … When the employee fails to follow reasonable time reporting procedures she prevents the employer from knowing its obligation to compensate the employee and thwarts the employer's ability to comply with the FLSA."); *Brown v. ScriptPro*, 700 F.3d 1222, 1230-31 (10th Cir. 2012) (affirming summary judgment for employer when plaintiff chose not to report hours worked from home on the defendant's timekeeping system in violation of company policy); *Boelk v. AT&T Teleholdings, Inc.*, No. 12-240, 2013 WL 3777251, at *11 (W.D. Wis. July 19, 2013) ("It would be improper to hold defendants liable for plaintiffs' voluntary failure to comply with reasonable timekeeping procedures, particularly when there is no evidence that defendants discouraged plaintiffs from complying with the system or had any reason to believe plaintiffs would not comply with it.").

The need for individualized inquiries is also significantly magnified because Plaintiffs are not confined to settings where direct Company oversight is possible.  They spend their days in the field.  Some who took trucks home would engage in alleged off-the-clock activities *at home* and some may not have.  Thus, whether a supervisor knew or should have known of off-the-clock work becomes even more case-specific. *MacGregor*, 2011 WL 2981466, at *5 (describing "necessity for independent inquiries into each alleged violation" when plaintiffs "worked independently in the field" and were instructed to take lunch breaks).  In many cases, Plaintiffs' only argument for management knowledge turns on whether one manager was at one meeting where he was informed that technicians were working during lunch breaks.  Individualized inquiries would be necessary to determine such details and to determine whether those technicians attended meetings where management instructed them to take lunch breaks.  *Cf. Schremp v. Langlade County*, No. 11-C-590, 2012 WL 3113177, at *3 (E.D. Wis. July 31, 2012)

(that plaintiff sometimes worked outside his regularly scheduled work hours does not equate to knowledge "he was not being *compensated* for such time)" (emphasis in original)); *White*, 699 F.3d at 875 ("The relevant knowledge is not 'I know that the employee was working,' but "I know the employee was working and not reporting his time.'").

Finally, even if some opt-in Plaintiffs testify to discussing with management alleged off-the-clock work, the fact that *some* technicians identified *some* supervisors as culprits only underscores the need for individualized inquiries.  *See Richardson*, 2012 WL 334038, at *5 ("Plaintiffs' own depositions reveal that some managers had no knowledge and others had little knowledge about subordinates' alleged off-the-clock [sic] work activities.")[11]  Plaintiffs certainly have not identified any common off-the-clock policy or practice, and there is none.

### 4.    Determining Damages Requires An Individualized Inquiry.

The necessity for individualized inquiries to determine any technician's  damages also warrants decertification.  *Micron Elecs., Inc.*, 2005 WL 5336571, at *4 (manageability weigh against proceeding as a collective action when a "number of individualized issues regarding damages are involved in this action, as well as the issue of whether [defendant] knew that a particular Plaintiff was working off-the-clock"); *Espenscheid v. DirectSat, USA, LLC*, 705 F. 3d at 773-74 (calculation of damages presents significant challenges, as all plaintiffs would have had to have done the same amount of work, and overtime, and been paid the same wage).

---

[11] In fact, courts have granted decertification or denied class certification even when faced with far stronger evidence of management knowledge. *See, e.g.*, *Prise*, 817 F. Supp. 2d at 662-63 (decertification proper notwithstanding testimony of managers changing employees' timesheets); *Slayton v. Iowa College Acquisition Corp.*, No. 09 C 6977, 2010 WL 3937455, at *3 (N.D. Ill. Oct. 5, 2010) (denying Rule 23 certification despite evidence of management requesting time card be changed because it contained unauthorized overtime and managers being observed on several occasions reducing employees' time before approving it).

The absence of any common or class-wide basis to determine damages for more than 100 opt-in Plaintiffs may be most obvious from the fact that even the named Plaintiffs still cannot determine their own individual damages after years of litigation.  By Plaintiffs' own admissions, they have been unable to calculate damages for themselves or anyone else.  Silvar Dec. ¶¶ 72-73. and Exs. YY and ZZ (Interrogatory Responses 6 and 7 and Initial Disclosures). Plaintiffs indicated they could not provide a detailed computation of damages until the close of discovery.  *See id.*  But discovery has closed, and Plaintiffs have provided nothing.  Moreover, as discussed above, since Plaintiffs admit that "it is impossible to know with precision each and every instance in which [off-the-clock] work was performed and the precise hours worked," an individualized analysis is needed to determine the "specific facts establishing when, and for how long, [each Plaintiff and Opt-In] performed the [] tasks for which [he or] she now seeks compensation." *Joza*, 2010 WL 3619551, at *7 (quoting *Seever*, 528 F. Supp. 2d at 169-70); Silvar Dec. ¶ 73 and Ex. ZZ at No. 7.  In sum, the damages for each Plaintiff would be drastically different and an individualized inquiry is unavoidable.

### D.     VisionPro Has Additional Defenses That Must Be Applied Individually.

The claims are also subject to additional individualized defenses, which strongly favor of decertification.  First, some claims would be barred in whole or in part by defenses of release, waiver, and/or estoppel due to earlier litigation involving technicians.  *See Stewart, et al. v. VisionPro Communications, Corp.*, No. 1:10-cv-03688, Dkt. #39, Class Settlement Approval.

Second, VisionPro will dispute the allegations that it was known Plaintiffs worked off the clock with testimony from managers and others that Plaintiffs were instructed in varying documents, meetings, and individual discussions to record all time, they were never told not to do so, and the managers had no knowledge of the alleged work.  *See e.g.*, *Briggins*, 2012 WL 1699856, at *18 (recognizing "defendants would have to question and impeach individual

plaintiffs, because no representative testimony exists as to the extent of a plaintiff's unpaid overtime"); *Pacheco*, 671 F. Supp. 2d at 964 (because company policy complies with FLSA requirements, plaintiffs' allegations of a uniform contrary practice "rest peculiarly on Plaintiffs' credibility"). Only individual trials, or a collective trial with more than 100 witnesses that would be a series of mini-trials, could allow VisionPro to cross-examine Plaintiffs to refute or at least undermine their assertions. *See e.g.*, *Briggins*, 882 F. Supp. 2d at 1275 (individualized defenses implicated when at least two plaintiffs' "scanning" times into a facility contradicted their deposition testimony). Under these circumstances, decertification is appropriate. *See, e.g., Martin*, 2013 WL 1234081 at *6-7. ("In order to resolve the question of liability, a fact-finder would need to determine whether the employer or the manager was being truthful …[and] this question with regard to one manager and one employee would not accomplish the task for any of the others[.] . . . [These] individualized defenses destroy the efficiency sought to be gained through a collective action.").

Other defenses also favor decertification. VisionPro can dispute whether any of the claimed off-the-clock work by any technician is compensable.  Under the Portal-to-Portal Act, work performed before or after a scheduled shift is not compensable unless the work was integral and indispensable to principal job duties, which is a determination ill-suited to collective treatment.  *See Whineglass v. Smith*, 2013 WL 2237841, at *9-10 (M.D. Fla. May 21, 2013) (potential portal-to-portal defense weighed in favor of decertification); *Marshall v. Amsted Rail Co.*, No. 10-CV-0011-MJR-SCW, 2012 WL 549941, at *8-9 (S.D. Ill. Nov. 13, 2012) ("[T]here is no series of events that begins or ends all Plaintiffs' work days, and there is no common routine among the Plaintiffs in terms of their pre-and post-shift actions. To the contrary, the Plaintiffs differ both in what they do before and after their shifts and in what their principal

activities are."); *Gatewood v. Koch Foods of Mississippi, LLC*, No. 3:07CV82-KS-MTP, 2009 WL 8642001, at *19 (S.D. Miss. Oct. 20, 2009) (finding "specific factual inquiry with respect to each plaintiff's claim" required for Portal-to-Portal Act defense).

In addition, VisionPro can argue any given technician's alleged off-the-clock work on any given day was *de minimis* and not compensable.[12]   *Zivali v. AT&T Mobility LLC*, 784 F. Supp. 2d 456, 468 (S.D.N.Y. 2011) (*de minimis* defense was individualized defense weighing in favor of decertification); *Seward v. Int'l Bus. Machine Corp.*, 2012 WL 860363, at *2 (S.D.N.Y. Mar. 9, 2012) (decertifying collective action because "defenses were highly fact specific and w[ould] likely depend on the testimony of individual plaintiffs and managers"); *Reed v. County of Orange*, 266 F.R.D. 446,  461-62 (C.D. Cal. 2010) (*de minimis* defense an individualized inquiry when plaintiffs' claims are highly individualized).

Finally, there are statute of limitations defenses to opt-in Plaintiffs who opted in more than two years after separation because Plaintiffs have no common evidence of willfulness.

### E.   Fairness and Procedural Considerations Mandate Decertification

A collective action makes sense only if class-wide claims can be adjudicated efficiently and effectively in one proceeding.  Here, only judicial *in*efficiency would result from collective adjudication because there is no way the Court could collectively assess liability.  *See, e.g., Zivali*, 784 F. Supp. 2d at 459 (where substantial factual variations exist "considerations of procedure and fairness weigh heavily in favor of granting decertification); *Whineglass*, 2013 WL 2237841, at *10 ("judicial economy is not served in this circumstance because each plaintiff's claim raises distinct factual and legal issues which would essential evolve into . . . . distinct trials.

---

[12] *See Sandifer v. US Steel Corp.*, 678 F.3d 590, 593 (7th Cir. 2012); 29 C.F.R. § 785.47 ("In recording working time under the Act, insubstantial or insignificant periods of time beyond the scheduled working hours, which cannot as a practical administrative matter be precisely recorded for payroll purposes, may be disregarded. The courts have held that such trifles are de minimis.").

The need for such individualized inquiries contravenes the basic theory of judicial economy upon which the certification of collective actions is based.").

As demonstrated above, the parties would need to call to the stand each employee, each of his or her multiple supervisors, and other potential witnesses, such as the employee's co-workers, to, *inter alia*, address or corroborate what was said by management.  Jurors would be overwhelmed by the individualized issues presented by each technician's claims.  *Beauperthuy*, 772 F. Supp. 2d at 1127-28.  ("[G]iven Plaintiffs' varying factual and employment settings and the lack of substantial evidence that Plaintiffs were subjected to a uniform decision, policy or practice...the jury will have to make individualized determinations [including]whether each particular trainer qualified as exempt from overtime...The need for such individualized inquiries would make proceeding by representative testimony impracticable."); *Marshall*, 2012 WL 5499431, at *10 (concluding "a jury would be substantially burdened if asked to sit through a trial that, realistically, might last 7 or 8 weeks and involve a massive amount of detailed, Plaintiff-specific evidence – not to mention a confusing tangle of jury instructions and verdict forms"); *Zivali*, 784 F. Supp. 2d at 469 (finding resolution of case would require thousands of mini-trials in which "each individual plaintiff could present evidence that he or she in fact failed to receive proper overtime compensation – evidence that would then be subject to cross-examination and similar challenge by the defendant); *Kuznyetsov*, 2011 WL 6372852, at *7 (disparate factual and employment settings and individualized defenses "present significant manageability problems").

In addition, allowing such mini-trials would be highly prejudicial to Defendant's constitutional right to a fair opportunity to defend itself, including its right to cross-examine each technician.  The only way to avoid that prejudice is through decertification. *See Lusardi v. Xerox*

*Corp.*, 118 F.R.D. 351, 371-73 (D.N.J. 1987); *Gatewood*, 2009 WL 8642001, at \*21 (decertifying class due to "serious fairness issues").  In contrast, decertifying the class would not unfairly disadvantage anyone.  The Opt-In Plaintiffs would be dismissed without prejudice, and they would retain the right to pursue any timely claims individually.  They would have "sufficient incentive to pursue a meritorious claim" given their level of compensation, the alleged hours worked, and the existence of statutory attorneys' fees for even an individual lawsuit.  *See Novak v. Home Depot U.S.A., Inc.*, 259 F.R.D. 106, 117 (D.N.J. 2009).  If any opt-in Plaintiffs have viable claims, they would also likely benefit from having their claims tried apart from those with non-meritorious claims.  *Id.*

**V.     If This Court Permits the Collective Action To Proceed, Which It Should Not, Improper Opt-Ins Should Be Dismissed.**

Should the Court allow the collective action to proceed to trial, at a bare minimum a number of opt-in Plaintiffs must be dismissed.  These individuals incorrectly received a Notice, but they do not fall within the collective definition set out by the Court's Order conditionally certifying this action (Dkt. #47 at 10) for the following reasons: (1) their FLSA claims are time-barred; (2) they performed services outside of the state of New York; (3) they were not employed by VisionPro as technicians; (4) they failed to timely file consent to join forms; or (5) they  never worked for VisionPro.  These individuals and the supporting facts which compel their exclusion are set forth in the accompanying Declaration of Kevin Silvar.

**VI.     CONCLUSION**

For the foregoing reasons, Defendant requests that the Court decertify the collective action and dismiss from this lawsuit all individuals who filed consents to opt into this case.[13]

---

[13] Should the case be decertified Defendant also requests an opportunity to brief whether the claims of the named Plaintiffs should be severed for trial.  At a minimum any retaliation claim is necessarily individualized and the evidence of it for one Plaintiff would unfairly prejudice the jury as to VisionPro for the other.

Dated:      Woodbury, New York
               January 11, 2016

**KAUFMAN DOLOWICH & VOLUCK, LLP**

By:_____/s/_____
        Jeffery A. Meyer, Esq. – jmeyer@kdvlaw.com
        Sanjay V, Nair, Esq. –  snair@kdvlaw.com
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Phone: (516) 681-1100
Fax:  (516) 681-1101
*Attorneys for Defendants*